UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:22-CV-847-LCB-JCW

| | |
|---|---|
| JOHN D. SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNIVERSITY OF NORTH CAROLINA HEALTH CARE SYSTEM, | ) ) ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR PROTECTIVE ORDER  (QUASH BRYANT DEPOSITION)**

COMES NOW the Plaintiff by and through the undersigned counsel and responds to Defendant's Second Motion for a Protective Order regarding the Deposition of Will Bryant (Doc. 52-52).  Plaintiff also certifies pursuant to Rule 37(a)(1) that Plaintiff's counsel has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  The emails supporting this certification have already been filed either as attachments to Defendant's Second Motion for a Protective Order or are attached to this Response.

**FACTS PERTAINING TO THE DISCOVERY MOTIONS**

-1-

Plaintiff seeks to take the deposition of Will Bryant in person and with only the usual 7-hour limitation for which the Rules of Civil Procedure provide. Counsel for the parties have discussed his deposition, as well as other depositions and discovery matters, repeatedly during the discovery period. Defendant's counsel has also changed her position a number of times on a variety of issues and Plaintiff's counsel has not sought to hold Defendant's counsel's feet to the fire about any issues (such as insisting the depositions take place at one location and the day before changing the deposition to a different location which happened multiple times.) Such as the vicissitudes of litigation.

Now, however, Defendant's counsel seeks to assert that because at one time Plaintiff's counsel was, in the interest of resolution, willing to compromise on certain issues such as taking a remote deposition in the interest of time, Plaintiff's counsel is now precluded from asserting Plaintiff's rights to take Will Bryant's deposition in person and without limits other than those imposed by the Rules of Civil Procedure.

The proposed deponent, Will Bryant supervised Ryan Rotar. Plaintiff's complaint alleges that Bryant involved in the decisions not to fill the position for which Plaintiff first applied in the fall of 2019. This is the same position about which Defendant resists providing discovery. Defendant contends that Bryant can provide no relevant testimony for the time period after he vacated the position of interim Vice President when Clinton Hazziez was hired in

February 2020. Sullivan Dep. 126:24-127:8. This is a contention without factual support in the record.

In fact, Bryant's linked-in profile shows the following service with Defendant:

**UNC Health**
5 yrs 3 mos

Chief Financial Officer - UNC Hospitals
Feb 2020 - Feb 2022 · 2 yrs 1 mo
Chapel Hill, North Carolina, United States

Associate Chief Financial Officer - UNC Health
Nov 2019 - Feb 2022 · 2 yrs 4 mos
Raleigh-Durham-Chapel Hill Area

System VP of Finance & CFO of UNC Health Care Shared Services
Sep 2018 - May 2021 · 2 yrs 9 mos
Chapel Hill, North Carolina, United States

The positions listed are overlapping in time frame and not clearly separated, but the listing clearly show executive level authority over the Supply Chain division, either directly or indirectly, for both the position for which Plaintiff applied in the fall of 2019 and the re-posted position for which he applied in December 2020. Moreover, Bryant had indirect supervisor authority over Plaintiff until February 2020, when Clinton Hazziez began supervising Rotar in the ED role, after which, Hazziez as Bryant's replacement, presumably reported to

In Plaintiff's Complaint he alleged Bryant was responsible for the new organizational structure which resulted in the elimination of Plaintiff's then position in the summer of 2019 and the creation of the position for which he

applied in the fall of 2019.  Doc.1,¶10,11; Sullivan Dep. 94:22-97:4.  Bryant was also responsible for hiring and supervising Ryan Rotar as Plaintiff's supervisor in the summer of 2019.  Doc.1,¶10  The position for which Plaintiff applied was a Director level position in charge of "Strategic Sourcing."  Doc.1,¶14  And it was Bryant and an HR person Patty White who informed Sullivan at a meeting on June 12, 2019, that his Director position was being eliminated and that he could accept a demotion to a non-director "manager" position or lose his job in 90 days. Sullivan Dep. 105:11-106:18

Sullivan also testified that Bryant told him that he was not going to move forward in the interview process for the Executive Director job that Jeff Yardley had been demoted from.  Sullivan Dep. 110:2-15  Bryant selected Ryan Rotar for that position and Yardley and Plaintiff began reporting to Rotar.

The Strategic Sourcing Director position was posted in August or September of 2019.  Sullivan Dep. 120:11-122:5  Plaintiff applied for the position and was phone screened for the position by Melanie Miller. *Id.* 123:10-25  During this time, Ryan Rotar was the hiring manager for the position and reported to Will Bryant the interim VP. *Id.* 122:10-15  Sullivan testified that when he asked Rotar when interviews for the position would occur, he was told that "we" were trying to get that "squared away" (not a quote but essentially arranged) and that Sullivan was on the list of applicants to

interview. *Id.* 124:17-125:12  In fact, Rotar admitted that Sullivan was the only internal applicant for the position.  *Id.* 90:13-15

In fact, Rotar testified that he did not make the decision as to whom to interview for the position posted in Aug-Sep 2019.  Rotar Dep. 89:7-11.  Rotar also testified that he was "sure" Will Bryant was asking him why the Strategic Sourcing director position was not filled. *Id.* 89:20-24  Rotar testified that he told Bryant that he was "trying his best to get it filled."  *Id.* 89:24 Then, in an about face, he testified that no one was "pushing" him to get the position filled. *Id.* 90:1-12

In addition, Rotar admitted that when Hazziez made interim appointments and moved people around in August 2020, Rotar was aware of it ahead of time but disagreed with Hazziez's decision to "turn[] over divisions that were . . . very fragile, to another colleague who . . . didn't have any supply chain experience or acumen."  Rotar Dep. 98:1-18  Rotar also admitted that any hire made for a director level position would certainly have involved Will Bryant at that time.  *Id.* 116:7-16 And he admitted that when hiring for the second position, the director of sourcing and contracting, the Melanie Miller in HR emailed Clinton Hazziez about scheduling interviews for the position, not Rotar.  *Id.* 149:1-9 Rotar testified it was a "great question" why Miller was emailing Hazziez, given that Rotar was supposedly the "hiring manager." *Id.* 148:24-149:8; 205:18-25.  In fact, Rotar testified that even though he was the

hiring manager, he never saw a number of the applications submitted for the position which were reviewed by Hazziez. *Id.* 206:1-209:1  Rotar also indicated that he sent the interviewing team recommendations to Hazziez for review and final approval.  *Id.* 211:17-214:23

Sullivan also testified that Bryant was involved in the process to select Hazziez. Sullivan Dep. 127:19-24.  Bryant reported to Mark Miller at that time, whose title was Senior VP for Finance for Defendant.  *Id.* 128:2-17 Bryant's linked in profile indicates that he served as Chief Financial Office for Defendant from February 2020 to February 2022, thus making him Clinton Hazziez's supervisor and thus Plaintiff's indirect supervisor for the second December 2020 posting, for which Josh Van Dyke was selected.  Thus, Defendant's contention that Bryant has no relevant testimony to provide regarding that time period is without merit.  As Hazziez's supervisor, he would certainly have been made aware of the acting roles into which Hazziez moved various individuals in the Supply chain organization during the time between when the first posting was cancelled and the second posting occurred.

As argued previously, other facts make Bryant's testimony essential for Plaintiff to obtain. Plaintiff previously noted that Rotar, who reported to Bryant, could not explain other than he was "busy" why he did not fill the position for which Plaintiff applied and he could not explain why or whether Will Bryant wanted the position filled or whether he had any discussions with

Bryant about filling or not filling the position. Moreover, Plaintiff testified that Bryant told him he would be a good candidate for the Director position.

## ARGUMENT

### I. The Apex doctrine does not support either the preclusion of or limiting the deposition of Will Bryant.

"The Fourth Circuit has neither adopted nor rejected the apex deposition rule." *Burke v. GP Transp. Co.*, No. 5:20CV190, 2022 U.S. Dist. LEXIS 242247, at *4-5 (N.D.W. Va. May 23, 2022) (citing *Cunagin v. Cabell Huntington Hosp., Inc.*, No. 3:19-cv-00250, 2021 U.S. Dist. LEXIS 73843, 2021 WL 1518877, at * 4 (S.D. W.Va. Apr. 16, 2021). *Accord Trustees of Purdue Univ. v. Wolfspeed, Inc.*, No. 1:21cv840, 2023 WL 4564558, at *4 (M.D.N.C. July 17, 2023). In the *Wolfspeed* case, cited by Defendant, the Court clearly stated that "[m]ore importantly, the Apex Doctrine 'is bottomed on the apex executive lacking *any* knowledge of the relevant facts.'" *Id.* (citing *Paice, LLC v. Hyundai Motor Co.*, No. 12-CV-499, 2014 U.S. Dist. LEXIS 95045, 2014 WL 3613394, at *1 (D. Md. June 27, 2014) (emphasis in original).

As the recitation of facts above demonstrates, "the [A]pex [D]octrine, whatever its authority, does not prohibit the deposition of executives who have personal knowledge relevant to the parties' claims and defenses." *Id.* (quoting *Duke Energy Carolinas, LLC v. NTE Caroinas II, LLC*, No. 3:19-CV-515, 2021 U.S. Dist. LEXIS 236276, 2021 WL 5826786, at *3 (W.D.N.C. Dec. 8, 2021).

Bryant was the interim VP supervising the hiring official, Ryan Rotar, when the decision not to interview any of the applicants for the position posted in Aug-Sept 2019 was made.  He continued in that role until February 2020, when he then became the direct supervisor of Clinton Hazziez who Rotar admitted was clearly taking actions consistent with being a hiring manager during the selection process for the position for which Josh Van Dyke was selected and Plaintiff was rejected.  Even if the Court agrees with the Defendant's position that the only job opportunity at issue is the one posted in December 2020, Clinton Hazziez was the decision maker and like Ryan Rotar would have run the decision to hire his decision to reject Plaintiff and hire Josh Van Dyke past his supervisor, which would have been Will Bryant, as the CFO, just as Will Bryant, when in Hazziez's position, reported to Mark Miller, then then CFO.

    No other witnesses have been offered by Defendant to explain why Plaintiff was not selected for the first time the position was posted.  It is only because this position was not filled for eight months after it was posted and then cancelled in March 2020 that the posting on the position again in December 2020 occurred.  Bryant's testimony is critical to understand whether Defendant even can articulate a legitimate nondiscriminatory reason has for rejecting Plaintiff the first time and then reposting the position.

Finally, Defendant's argument that once articulated, a party is bound to maintain its position applies, if meritorious, preclude Defendant from arguing that the Apex doctrine preclude Bryant's deposition.  This is because Defendant has previously conceded that the Apex doctrine does not apply by agreeing that Bryant could be deposed.  This leaves the matters to be determined not whether, but under what conditions, Bryant's deposition should take place.

## II. Defendant's argument that Bryant's deposition should be limited in duration and taken only remotely is without merit.

The limited period of time during the compressed discovery period is the reason given by Defendant for truncating both the length of Mr. Bryant's deposition and for conducting it remotely.  However, Defendant's counsel's unavailability combined with Mr. Bryant's unavailability resulted in the compressed discovery period.  Defendant's counsel, as compared to Plaintiff's counsel's firm of 3 lawyers, is composed of over 200 lawyers according to their website.

"A party requesting a protective order requiring a remote deposition must show a legitimate reason, or good cause, for taking the deposition telephonically." *Revak v. Miller*, No. 7:18-CV-206-FL, 2019 U.S. Dist. LEXIS 250910, at *4 (E.D.N.C. Oct. 18, 2019) (quoting *PMW Products, Inc. v. Atlas Alchem Plastics, Inc.*, No. 5:95-CV-16-BR, 1995 U.S. Dist. LEXIS 16134, 1995

WL 843954, at *1 (E.D.N.C. Oct. 16, 1995) (citing *Jahr v. IU Intl Corp.*, 109 F.R.D. 429, 431 (M.D.N.C. 1986)). Plaintiff sought dates for Mr. Bryant's deposition well before the only date offered by Defendant and then only offered remotely and the Defendant resisted relying on Mr. Bryant's importance in the Defendant's organizational structure (aka the apex doctrine) in resisting efforts by Plaintiff to take the deposition.

Indeed, there were multiple dates offered prior to the Defendant's first motion for a protective order. Ultimately, Defendants offered one date and only remote attendance and then filed a protective order. The fact that Mr. Bryant was out of town on a "personal" trip is insufficient justification and does not show any legitimate, much less, good cause for not making himself available in person on the date specified in the deposition notice. The delay in scheduling Bryant's deposition cannot be blamed on Plaintiff and Mr. Bryant's busy schedule and personal trips are not a sufficient reason to deprive Plaintiff of the testimony of a key witness. Defendant has not offered "cost" which can sometimes be a good reason, even if not dispositive. *See Webb v. Green Tree Servicing, LLC*, 283 F.R.D. 276, 279 (D. Md. 2012) (holding that the cost of travelling from Oregon to Maryland for a deposition was not good cause to conduct the deposition telephonically).

Even assuming the Defendant has articulated good cause for not producing Mr. Bryant on the date of his deposition, the burden then shifts to

the opposing party "to establish why the depositions should not be conducted telephonically." *Id.* In this case, Plaintiff's reasons are similar to those found to be sufficient by the Court in *Revak v. Miller*, No. 7:18-CV-206-FL, 2019 U.S. Dist. LEXIS 250910, at *5 (E.D.N.C. Oct. 18, 2019). In that case, the party opposing the remote deposition argued that (1) there were numerous documents likely to be used as exhibits, and managing a great number of exhibits is more difficult in a videoconference than if the deposition were conducted in person and "most importantly, the ability to observe [the deponent's] expressions and physical responses to questions in person" was crucial because the Defendant's "veracity" was "a key issue in the case." *Id.*

Likewise, in this case, both the Bianchin and Rotar depositions had multiple exhibits and while Bryant's deposition might have fewer, it is still anticipated that it would involve many of the same documents related to the supply chain sourcing and contracting positions. But most importantly is the fact that Defendant's proffered legitimate nondiscriminatory reason for Plaintiff's nonselection for the position posted in August 2019 and again in December 2020 is pretextual and much evidence supports that conclusion already. Plaintiff needs to observe Mr. Bryant's expressions and responses to the questions about the multiple inconsistent reasons given for his nonselection when questioned about them.

-11-

While the location of a deposition is ultimately left to the discretion of the court after a balancing of hardship and prejudice, *Tummings v. CSP Cmty. Owner, LP*, No. 5:18-CV-396-BO, 2019 U.S. Dist. LEXIS 248807, at *4 (E.D.N.C. Apr. 3, 2019) (citing *Gerasimenko v. Cape Wind Trading Co.*, 272 F.R.D. 385, 387 (S.D.N.Y. 2011)), Plaintiff has shown that limited the scope, timing and location of Bryant's deposition will be prejudicial, *Revak v. Miller*, No. 7:18-CV-206-FL, 2019 U.S. Dist. LEXIS 250910, at *6 (E.D.N.C. Oct. 18, 2019)(citing *Daly v. Delta Airlines, Inc.,* No. 90-CV-5700-MEL, 1991 U.S. Dist. LEXIS 2762, 1991 WL 33392 (S.D.N.Y. Mar. 7, 1991) (holding that difficulty managing documents as deposition exhibits and the inability to observe the witness may amount to prejudice in a telephonic deposition)).  This prejudice is especially great because it will support Plaintiff's counsel's affidavit to be offered in response to Defendant's motion for summary judgment that Plaintiff will be precluded from presenting facts to justify its opposition to the motion.

At this point, an amendment of the scheduling order would be necessary in order to allow the taking of Mr. Bryant's deposition.  And like the Court' authority as to discovery matters, "[t]he court has discretion in deciding whether to reopen discovery upon the request and a showing of good cause by a party." *Boshea v. Compass Mktg., Inc.*, No. ELH-21-00309, 2023 U.S. Dist. LEXIS 213751, at *11 (D. Md. Dec. 1, 2023) (quoting *InfoTek Corp. v. Preston*, CCB-18-1386, 626 F. Supp. 3d 885, 896 (D. Md. 2022) (citing Fed. R. Civ. P.

16(b)(4)). Plaintiff has shown good cause for noticing Bryant's deposition for an in-person deposition during the time allowed by the Court. Bryant's refusal to attend on that date was due to a "personal" trip and he offered no other in person dates as an alternative. The fact that Defendant has already filed a motion for summary judgment is no reason to not permit Plaintiff to depose Mr. Bryant when the trial date is not scheduled until next year.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant deny Defendant's motion for a protective order as to Will Bryant's deposition and permit Plaintiff to depose Mr. Bryant in person.

Respectfully submitted, this 27th day of August 2024.

| | |
|---|---|
| /s/ VALERIE L. BATEMAN | /S/ JUNE K. ALLISON |
| Valerie L. Bateman | June K. Allison |
| NC State Bar No. 13417 | NC State Bar No. 9673 |
| NEW SOUTH LAW FIRM | NEW SOUTH LAW FIRM |
| 209 Lloyd Street, Ste 350 | 233 S. Laurel Avenue |
| Carrboro, North Carolina 27510 | Charlotte, NC  28207 |
| Tel:  919-810-3139 | Tel:  704-277-0113 |
| Fax: 919-823-6383 | Fax: 919-823-6383 |

*Counsel for Plaintiff*

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed or caused to be filed the foregoing **RESPONSE** with the Clerk of Court using the CM/ECF system which will send notification of the filing of the document to all counsel of record.

This 27th day of August 2024.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM