UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:22-CV-847-LCB-JCW

| | |
|---|---|
| JOHN D. SULLIVAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNIVERSITY OF NORTH | ) |
| CAROLINA HEALTH CARE | ) |
| SYSTEM, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RULE 54(b) MOTION TO THE MAGISTRATE JUDGE TO RECONSIDER Text Order dated August 27, 2024**

COMES NOW Plaintiff Jack Sullivan ("Plaintiff" or "Sullivan") and files this brief in support of Plaintiff's Rule 54(b) Motion to Magistrate Judge Webster to Reconsider his Order dated August 27, 2024, denying Plaintiff's Motion to Extend Time to File a Response to Defendant's Second Motion for a Protective Order, and granting Defendant's Second Motion for a Protective Order precluding Bryant's testimony.

**STATEMENT OF THE NATURE OF
THE MATTER BEFORE THE COURT**

The Court's Text Order denied Plaintiff's Motion to Extend Time for

1

Excusable Neglect and granted Defendant's Motion seeking to prevent Will Bryant's deposition. **Exhibit 1 (Text Order)** Plaintiff moves the Court pursuant to Rule 54(b) to reconsider both of these matters which are addressed *seriatim* below.

## STATEMENT OF THE FACTS RELEVANT TO THIS MOTION

The facts relating to the need for the extension of time were detailed in Plaintiff's Motion (Doc 53) and involve matters over which the undersigned and her two law partners, who did not know that the undersigned was unaware of the motion, had no control--that is the sudden illness of the undersigned aunt and their subsequent infection with COVID.

Although no supporting brief was filed in support of the motion, Doc 53 contained not only the motion but also case law supporting the motion. As **Exhibit 2 (Separate Motion)** and **Exhibit 3 (Brief separated from Motion)** show, Doc 53 can be broken into two separate documents which the Court can then consider as both providing a supporting brief required by the local rules and addressing the merits of the Motion. Defendant is not prejudiced as it responded to Doc 53 which contains virtually the same substances as Exhibits 2 and 3.

The facts relating matters before the Court pertaining to the protective order are also set out in **Exhibit 4**, which is the response Plaintiff would have

2

filed on August 27, 2024, had the Court not denied Plaintiff's motion, and is incorporated herein by reference as essential for the Court's consideration pursuant to LR 7.1(c).

The motion for a protective order involves a discovery dispute over the taking of the deposition of Will Bryant, an employee of Defendant, and a decision maker as to both the positions denied Plaintiff in this matter which are being challenged as discriminatory on the basis of age. Bryant's testimony is critical to Plaintiff's obligation to show that Defendant's proffered reason for Plaintiff's non-selection for both the first and second reason were pretext for age discrimination. This testimony is even more critical given that Defendant has now filed a motion for summary judgment and without Bryant's deposition Plaintiff will be denied discovery of facts relating to Plaintiff's first application for the position he was ultimately denied in March of 2021. Thus, Plaintiff's counsel will be obligated to file a Rule 56(d) affidavit detailing the very matters raised in response to the motion for a protective order and in support of this motion to reconsider the Text Order of August 27, 2024.

## ARGUMENT

F.R. Civ. P. 54(b) provides that the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Walls v. Ford Motor Co.*, No. 1:20-CV-98,

2022 U.S. Dist. LEXIS 196263, at *4-5 (M.D.N.C. Oct. 28, 2022) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) and Fed. R. Civ. P. 54(b) ). This power is " 'committed to the discretion of the district court' and may be exercised as justice requires." *Id. (*quoting *Am. Canoe Ass'n*, 326 F.3d at 515). This discretionary power can be used by the Court to "prevent manifest injustice." *Id.* (citing Rule 59(e) and *South Carolina v. United States*, 232 F. Supp. 3d 785, 793 (D.S.C. 2017)).

### I. Plaintiff moves the Court to reconsider its Order denying Plaintiff's motion to extend time to respond to Defendant's second motion for a protective order.

Under F.R. Civ. P. LR 6(b) a motion may extend the time to perform an act made after the time has expired, "if the party fails to act because of excusable neglect." LR 6.1(a) provides that briefs shall be filed in support of such a motion and LR 7.2 provides the purpose of the brief—to provide the court with a "statement of the nature of the matter before the Court," the pertinent facts, questions presented, and the "statutes, rules and authorities" upon which the arguments in the brief rely.

"A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554, 558 (M.D.N.C. 2015) (citing *Moss v. Pasquotank Cnty.*, No. 2:10-CV-56-BR, 2011 U.S. Dist. LEXIS 87613, 2011 WL 3468395, at

4

*2 (E.D.N.C. Aug. 8, 2011) (affording litigant another chance to comply with local court rules where opposing party had suffered no prejudice)). "Dismissal is more apt to occur where . . . the motion provides no legal argument." *Lostutter v. Olsen*, No. 1:16-cv-1098, 2017 U.S. Dist. LEXIS 136280, at *38 (M.D.N.C. Aug. 24, 2017). Here, the motion contained legal argument and Exhibits 2 and 3, dividing up the motion into a separate motion and brief, do the same. Where the motion is of some urgency and presents a straightforward presentation of the issues, the Court may exercise its discretion to consider the motion on its merits. *Crisp v. Allied Interstate Collection Agency*, No. 1:15cv303, 2016 U.S. Dist. LEXIS 62807, at *9 (M.D.N.C. May 12, 2016).

In this case, the motion to extend time was made the very day the undersigned learned that the Defendant's motion had been forwarded to the Court for consideration and was filed as quickly as possible after apprising the Court of the need for an extension and the plan to file the motion asking for the same. The motion was not an attempt to willfully disregard the Court's rules but to expedite the process of bringing the matter to the Court's attention and to obtain the extension of time as quickly as possible.

In addition, the motion contained legal argument as to why the extension of time was necessary and warranted by excusable neglect. "Whether neglect is 'excusable' has been described by the Supreme Court as at bottom an

5

equitable [inquiry], taking account of all relevant circumstances,' including the following: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith." *Wiles v. Black,* No. 1:21CV84, 2022 U.S. Dist. LEXIS 207507, at *3 (M.D.N.C. Aug. 4, 2022) (quoting *Fernandes v. Crain*, 538 F. App'x 274, 276 (4th Cir. 2013) (citing *Pioneer Inv. Serer. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Of these four reasons, commonly known as the *Pioneer* factors, courts have noted that the third *Pioneer* factor is the most important. *United States v. Manriques*, No. 1:10CR440-1, 2013 U.S. Dist. LEXIS 146993, at *19 (M.D.N.C. Oct. 10, 2013) (citing *Thompson v. E.I. DePont Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996).

In this case, the reason for Plaintiff's request for an extension of time one day after Plaintiff's brief was due was excusable for the reasons stated in Plaintiff's motion: the undersigned attended her 88-year-old aunt in the Emergency Room and then after admission, in the hospital. After discharge from the hospital, the undersigned then stayed with her aunt at her aunt's home until returning to her own home on August 7, due to becoming ill with COVID which incapacitated the undersigned and resulted in a failure to note

6

the filing of the Defendant's second Motion for a Protective Order and its attendant response date. The undersigned was not in touch with her law partners during this time to request assistance in filing the brief responding to Defendant's second motion for a protective order because the undersigned did not see the filed motion. Moreover, the undersigned's law partners had no way of knowing that the undersigned did not see the motion. See Doc 53 and Exhibit 2 and 3 to Plaintiff's Rule 54(b) motion. Absent a lurid description of the exact nature of the undersigned's illness and how it incapacitated the undersigned, the undersigned has provided a sufficiently "detailed, rational explanation," *Penn-America Ins. Co. v. White Pines, Inc.*, Civil Action No. 2:19cv57, 2019 U.S. Dist. LEXIS 242032, at *4 (E.D. Va. Oct. 24, 2019), for how she missed the deadline by one day.

The undersigned filed the motion to extend time one day after Plaintiff's response or a motion to extend time would have been timely. A one-day delay almost by definition would not result in prejudice to Defendant or affect judicial processing since the discovery deadline extended by the Court had already expired prior to the due date of the response. As noted by the Court in *Gilyard v. Northlake Foods, Inc,* 367 F. Supp. 2d 1008, 1110-11 (E.D. Va. 2005) when considering a three-day delay:

> Ultimately, stands not for a rule, but for an equitable weighing of factors. And those factors support granting the motion in this case.

7

> Northlake was not and should not have been prejudiced by receiving the opposition three calendar days late. The length of the delay was minimal and did not affect judicial processing. Furthermore, Plaintiffs acted in good faith, with Plaintiffs' counsel submitting his motion for an enlargement and the responsive brief on the next business day. The only factor which undermines Plaintiffs' motion is that the delay was fully within their control. To allow this factor to triumph under these circumstances would divorce "excusable" from "neglect." Before a person can be negligent, the ability to do the act must have been within their control. For "excusable" to have meaning, there must be a circumstance where failure to do that which was within ones control is later allowed by a court.

In this case, the undersigned's incapacitation from COVID was not within her control, thus making the balancing of the equities wholly in Plaintiff's favor.

And any minimal prejudice to Defendant is insignificant when compared to the more important purpose of providing Plaintiff with adequate discovery. F.R. Civ. P. 1 which provides that the rules "should be construed . . . to secure the just . . . determination of every action and proceeding." This is especially true in this case when the deposition of Will Bryant is critical to Plaintiff's case.

The equitable weighing of factors in this case favors Plaintiff and favors a finding that the delay of one day in filing Plaintiff's motion to extend time was based on excusable neglect and manifest injustice will result if Plaintiff's response to Defendant's motion is not considered. Plaintiff respectfully moves the Court to reconsider this portion of its Order.

8

## II. Plaintiff moves the Court to reconsider its Order granting Defendant's motion precluded Plaintiff's deposition of Will Bryant.

As with the denial of the Plaintiff's motion to extend time to file a response to Defendant's motion, the granting of that motion will also result in manifest injustice to Plaintiff. "The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003).

Plaintiff's motion under Rule 54(b) asks the Court to reconsider its motion precluded the deposition of Will Bryant. "Because the Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion, district courts look to the standards of motions under Rule 59 for guidance." *Berkshire Hathaway Direct Ins. Co. v. Good Times Ent., LLC,* No. 7:22-cv-01757-DCC, 2024 U.S. Dist. LEXIS 96131, at *5-6 (D.S.C. May 30, 2024)(citing *Sanders v. Lowe's Home Ctrs., LLC*, C.A. No. 0:15-cv-02313-JMC, 2016 U.S. Dist. LEXIS 140542, 2016 WL 5920840, at *2 (D.S.C. Oct. 11, 2016)).

Under Rule 59, a court may alter or amend a judgment if the movant shows the same is necessary "(1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice." *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010); *Collison v. Int'l Chem. Workers Union*, 34 F.3d 233, 235

9

(4th Cir. 1994). As the Fourth Circuit has noted "[a] prior decision does not qualify for th[e] third exception by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 258 (4th Cir. 2018) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (internal quotation marks, citations, and alteration omitted) and citing *United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 804 F.3d 646, 657 n.6 . (4th Cir. 2015)).

The Court's Order granting Defendant's motion cited "relevancy and proportionality grounds laid out in Defendant's motion" and based on counsel's attestation "that 'Mr. Bryant took no part' in the underlying, underlying, disputed matter and any background evidence that he could provide would by 'nominal, if any.'" Counsel's attestation is not only a central disputed issue in this case, but in the words of the Fourth Circuit, it is "dead wrong."

Bryant was indisputably involved in the rejection of Plaintiff when he first applied for the director position posted in August/September 2019. This position was later cancelled in March 2020 and then reposted in December of 2020. Bryant selected Ryan Rotar for the Executive Director position over both Plaintiff and Plaintiff's former supervisor, the previous Executive Director, first in an interim capacity and then as the permanent replacement for Yardley

10

after Yardley and Plaintiff were removed from their positions. Bryant was in Rotar's chain of command for the first rejection, as Rotar's direct supervisor.

In addition, Plaintiff testified that Bryant encouraged him to apply for the Director position, which he did, and that Rotar told him he was trying to get interviews scheduled for the position, which never occurred. Rotar was supervised by Bryant until the hiring of Clinton Hazziez in February 2020. Rotar testified that Plaintiff was the only internal applicant for the position. It is inexplicable that Plaintiff was not selected for the position and that it remained unfilled, given Plaintiff's qualifications, his previous service in the position, and his previous performance evaluations, and State employee preference.

Furthermore, for the selection decision for the position posted in December 2020, documents produced by Defendants show that Clinton Hazziez was the person who controlled the decision of who would be interviewed for that position. Moreover, as noted in Exhibit 4, when the position was posted, Rotar acknowledged during his deposition that the emails between Hazziez and Melanie Miller in HR show that even though Rotar considered himself the hiring manager, Hazziez controlled the process.

Given that Bryant was involved in the process to select Hazziez, Sullivan Dep. 127:19-24, and Bryant reported to Mark Miller at that time, whose title

11

was Senior VP for Finance for Defendant, *Id.* 128:2-17, it is also presumed that Hazziez when he was hired, and Bryant returned to his position, that Bryant then supervised Hazziez.

Bryant's linked in profile indicates that he served as Chief Financial Officer for Defendant from February 2020 to February 2022, thus showing that he was, like Miller had been for him, Clinton Hazziez's supervisor as head of the Supply Chain organization. Thus, Bryant can be presumed to have been intimately involved as both Plaintiff's indirect supervisor, and Hazziez's direct supervisor, for the second December 2020 posting, for which Josh Van Dyke was selected. Thus, Defendant's contention that Bryant has no relevant testimony to provide regarding that time period is without merit. As Hazziez's supervisor, he would certainly have been made aware of the acting roles into which Hazziez moved various individuals in the Supply chain organization during the time between when the first posting was cancelled, and the second posting occurred.

Thus, Defendant's representation that Bryant's testimony is not relevant and not proportionate to the needs of the case is not just "maybe" or "probably wrong" given these facts.

The jurisprudence related to the evaluation of Rule 54(b) motions does not contemplate consideration of the timing of a motion to reconsider an

12

interlocutory order or any prejudice to Defendants. The Fourth Circuit has described the factors for consideration as follows:

> a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: '(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" [citation omitted.] "This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial."

*U.S. Tobacco Coop. Inc.,* 899 F.3d at 257 (quoting *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)). The fact that this motion to reconsider comes during the time period that Defendant's summary judgment motion is pending provides even more of a reason to grant it rather than reject it. Plaintiff has been seeking Bryant's deposition for months. It is not a sound basis on which to deny Plaintiff the right to take the deposition based on its timing. The fact that a confluence of events, inherent in the nature of litigation, in addition to the time taken up by the obligation to meet and confer before presenting disputes to the Court, resulted in the issue arising late in the discovery period does not mean that Plaintiff was not diligent in seeking Bryant's deposition.

The discovery period has a beginning and an end and parties "may conduct discovery at any time within the discovery period." *F.T.C. v. Timeshare Mega Media & Mktg. Grp., Inc.*, No. 10-62000-CIV, 2011 WL 6102676, at *5

13

(S.D. Fla. Dec. 7, 2011) *See also Charles v. City of New York*, No. 11 CIV. 2783 AT RLE, 2015 WL 756886, at *3 (S.D.N.Y. Feb. 20, 2015)(noting that even though a party "may have preferred to receive [the document' earlier on in the discovery process, this does not change the fact that" the documents were produced and the timing of the disclosure "does not 'require the conclusion that [it was driven by] some improper purpose.")

Finally, that the scheduling order would need to be amended to permit the deposition is likewise not an impediment to order Defendant to produce Bryant for deposition. And in fact, there are at least two sound reasons to order the same.

First, Plaintiff's counsel will have to file a Rule 56(d) affidavit explaining the specific "reasons, it cannot present facts essential to justify its opposition" and asking the Court to "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Second, Plaintiff moved to amend the scheduling order prior to the close of discovery to allow for the taking of Bryant's deposition; the Court allowed a brief period to time which proved to be insufficient despite the parties' attempts to schedule the same. Under LR26.1, the local rules explicitly contemplate that where the parties have been diligent in seeking discovery, the scheduling order may be amended. *See also* Fed. R.

Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). *See also Marcum v. Zimmer*, 163 F.R.D. 250, 255 (S.D.W. Va. 1995) ("[T]he touchstone of 'good cause' under Rule 16(b) is diligence." Despite the diligence with which Plaintiff pursued the taking of Will Bryant's deposition and the fact that it was noticed not once, but twice, and each time Defendant filed a motion for a protective order, the deposition has not occurred. This is through no fault of the Plaintiff.

## CONCLUSION

For the foregoing reasons, the Court should reconsider its order denying Plaintiff an extension of time to respond to Defendant's motion seeking a protective order precluding Will Bryant's deposition, and its order granting the protective order.

Respectfully submitted, this 3rd day of September 2024.

| | |
|---|---|
| /s/ VALERIE L. BATEMAN | /S/ JUNE K. ALLISON |
| Valerie L. Bateman | June K. Allison |
| NC State Bar No. 13417 | NC State Bar No. 9673 |
| NEW SOUTH LAW FIRM | NEW SOUTH LAW FIRM |
| 209 Lloyd Street, Ste 350 | 233 S. Laurel Avenue |
| Carrboro, North Carolina 27510 | Charlotte, NC  28207 |
| Tel:  919-810-3139 | Tel:  704-277-0113 |
| Fax: 919-823-6383 | Fax: 919-823-6383 |

*Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d), counsel for Defendant certifies that the foregoing **BRIEF** complies with the word count limitations of the rule and is less than 6,250 words in length.

This 3rd day of September 2024.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed or caused to be filed the foregoing **BRIEF IN SUPPORT OF PLAINTIFF'S MOTION UNDER RULE 54(b) TO RECONSIDER** with the Clerk of Court using the CM/ECF system which will send notification of the filing of the document to all counsel of record.

This 3rd day of September 2024.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM