IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:22-CV-847-LCB-JLW

| | | |
|---|---|---|
| JOHN D. SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT'S RESPONSE IN** |
| THE UNIVERSITY OF NORTH | ) | **OPPOSITION TO PLAINTIFF'S** |
| CAROLINA HEALTH CARE SYSTEM, | ) | **RULE 56(d) DECLARATION** |
| Defendant. | ) | |
| | ) | |
| | ) | |

Defendant University of North Carolina Health System ("Defendant" or "UNC Health") files this response, pursuant to Fed. R. Civ. P. 56 and Local Rules 7.2 and 7.3, in opposition to Plaintiff's Counsel's Rule 56(d) Declaration Opposing Defendant's Motion for Summary Judgment [Doc. 61].

**NATURE OF THE MATTER BEFORE THE COURT**

The sole cause of action before the Court is Plaintiff's claim that UNC Health engaged in age discrimination by denying him a promotion to Director of Sourcing & Contracting in the Supply Chain department in April 2021. Plaintiff's Rule 56(d) Declaration asserts that Defendant's purported "refusal" to produce documents sought by Plaintiff and to produce Chief Financial Officer William Bryant for deposition have prevented Plaintiff from being able to obtain the evidence needed to oppose Defendant's

summary judgment motion. [*Id.* ¶¶ 31-32]. Defendant opposes Plaintiff's request for Rule 56(d) relief for the multiple reasons set forth below.

## SUMMARY OF THE ARGUMENT

Plaintiff's Rule 56(d) Declaration is one of a flurry of filings that attempt to manufacture a triable issue of material fact, where none exists. In addition to the Rule 56(d) Declaration, Plaintiff also filed a Rule 54(b) Motion [Doc. 58] to reconsider the Magistrate Judge's August 27, 2024 Text Order denying Plaintiff's Motion to Extend Time for Excusable Neglect [Doc. 53] and granting Defendant's Motion for Protective Order to preclude the deposition of Bryant [Doc. 51], who has declared under oath that he did not participate in the promotion decision [Doc. 51-3]. Plaintiff also filed a Motion to Extend Time to Respond to Defendant's Motion for Summary Judgment [Doc. 60] based, among other things, on his anticipated Rule 56(d) submission.

Notwithstanding the hubbub, Plaintiff has not fulfilled Rule 56(d)'s rudimentary requirement of providing an affidavit or declaration that is based on personal knowledge. Plaintiff submits the Declaration of his counsel, who claims to "stat[e] facts on which [she has] personal knowledge" [Doc. 61 at ¶ 1], but instead relies on argument and unsubstantiated conjecture. In fact, many of the attestations contained in the Declaration are demonstrably inaccurate.

Nor has Plaintiff shown he was unable to conduct discovery that is essential to his summary judgment opposition. Plaintiff received ample opportunity to obtain discovery, but failed to proceed with even a modicum of diligence. Even though Plaintiff allowed

2

the extended discovery period to expire without filing a motion to compel, the Court nevertheless re-opened discovery, *sua sponte*, to afford him the opportunity to reach a compromise agreement with Defendant that would enable him to depose Bryant and obtain allegedly missing documents. [Text Order July 24, 2024.] The Court directed the parties to work cooperatively to reach a mutual agreement on these matters and made it clear that "compromise [was] expected," as "there [would] be no further extensions of said deadlines." [*Id.*]

Plaintiff squandered this opportunity. First, Plaintiff refused to consider any limitations on the terms for Bryant's deposition. Not only did Plaintiff fail to heed the Court's instructions to work toward a compromise, but he drew back in the opposite direction. Plaintiff retracted his previous agreement to depose Bryant remotely, even though Bryant was traveling out of state and had limited availability during the brief window for his deposition. Plaintiff's refusal to work cooperatively with Defendant, in defiance of the Court's explicit instructions, necessitated the filing of Defendant's Second Motion for Protective Order [Doc. 51], which Plaintiff failed to timely oppose, and the Court has now granted. [Text Order Aug. 27, 2024.]

Plaintiff also failed to avail himself of the opportunity to obtain the documents he claims to need. Pursuant to the Court's directive, Defendant transmitted a 2,282-page supplemental document production to Plaintiff on August 1, 2024. To this day, Plaintiff's counsel has failed to access or download these materials, despite receiving multiple communications from Defendant about their availability. Had counsel bothered to

3

download the production, Plaintiff would have had, as early as six weeks ago, the documents he now claims to need for his summary judgment response. If Plaintiff believed he was missing anything, he could have followed up and conferred with Defendant about it prior to the close of the re-opened discovery period on August 14, as Defendant's counsel expressly invited him to do. Instead, Plaintiff filed a Rule 56(d) Declaration [Doc. 61] claiming Defendant "refused" to produce Bryant for deposition or produce documents sought in discovery.

Plaintiff fails to show the discovery he seeks is material to any matters at issue or would otherwise enable him to create the triable fact issue he is scrambling to construct. Defendant has met its burden of establishing it is entitled to judgment as a matter of law and, aside from the argument and evidentiary material contained in the Rule 56(d) Declaration, Plaintiff provided no substantive response. For these reasons, the Court should deny Plaintiff's request for Rule 56(d) relief and grant Defendant's Motion for Summary Judgment.[1]

---

[1] Plaintiff's failure to file a timely substantive response to the Motion for Summary Judgment puts Defendant and the Court in a difficult situation given the February 3, 2025 trial date. If the Court grants Plaintiff his request for an additional 14 to 28 days *after* the Court rules on the pending Rule 59 and Rule 56(d) motions to respond to the summary judgment motion, summary judgment briefing likely will not close until October or November. This will leave the Court with just a few months, if not weeks, to consider the merits of the summary judgment motion. At the same time, summarily denying Defendant's Motion for Summary Judgment would substantially prejudice Defendant and reward Plaintiff's lack of diligence. Accordingly, if the Court denies Plaintiff's Rule 56(d) request but grants his motion for extension, Defendant requests that the Court set an expedited briefing schedule for Plaintiff's summary judgment opposition and Defendant's reply.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Proposed Deposition of CFO Bryant

On June 4, 2024, Plaintiff informed Defendant that he intended to depose its Chief Financial Officer, William Bryant. [Doc. 38 at ¶ 5.] As CFO, Bryant reports directly to the Chief Executive Officer and provides financial leadership and oversight to UNC Health's hospitals, campuses, and clinics across of North Carolina, involving a combined $8.2 billion in annual revenue. [Doc. 51-3 at ¶¶ 1-2.]

As shown by his sworn declaration, Bryant **did not in any way participate** in the April 2021 promotion decision at issue in this case. [*Id*. at ¶ 5.] Bryant did, however, serve as interim Vice President of Supply Chain from October 2018 through February 2020, and therefore has some background knowledge regarding past employment actions and organizational changes in Supply Chain. [*Id*. at ¶ 4.]

Although Rule 26 proportionality considerations indicate Bryant's deposition should not proceed at all, Defendant attempted to negotiate mutually agreeable terms for the deposition. [Doc. 38.] To this end, Defendant repeatedly offered to make Bryant available, with reasonable limitations on the duration and subject matter of the examination. [*Id*.] Plaintiff refused to accept the proposed limitations. [*Id*.]

Unable to reach a compromise, Defendant filed on July 5, 2024, its first Motion for Protective Order [Doc. 36] to preclude Plaintiff from deposing Bryant. Plaintiff never

5

filed a motion to compel discovery,[2] but his response to the Motion for Protective Order [Doc. 50] filed on July 22, 2024, requested that the Court compel Defendant to produce Bryant for deposition and respond fully to Plaintiff's discovery requests. These are the same purported discovery issues that now form the basis of Plaintiff's Rule 56(d) request.

### B. Text Order *Sua Sponte* Re-Opening Discovery

On July 24, 2024, the Court initiated a telephone conference with counsel, and determined "that a breakdown in communication has likely led to the pending filings more than the discovery issues presented in such filings." [Text Order July 24, 2024.] Accordingly, the Court *sua sponte* entered a Text Order re-opening discovery until August 14, 2024, to "allow the parties an opportunity to resolve their outstanding discovery disputes prior to the time for summary judgment filings and trial." [Text Order July 24, 2024.] The Text Order specified that the "limited purpose" of re-opening discovery was to "afford the parties an opportunity: (1) to come to an agreement regarding the terms and to conduct the deposition of UNC Health's Chief Financial Officer William Bryant; and (2) to come to an agreement regarding outstanding discovery production (i.e., issues discussed by Plaintiff at Docket Entry 50 at 17-20)." [*Id.*]

The Court reaffirmed the summary judgment deadline on August 22, 2024, and set the response deadline on September 5, 2024, and reply deadline on September 12, 2024,

---

[2] Local Rule 7.3(a) requires motions to be set out in a separate document and accompanied by a brief. Additionally, Local Rule 37.1(a) contains specific "meet and confer" and certification obligations for discovery-related motions. Plaintiff complied with none of these requirements as to his "motion to compel."

and terminated Defendant's Motion for Protective Order as moot. The Court stated, "The parties are encouraged to work cooperatively … to find a mutual resolution of their discovery-related disputes as there will be no further extension of said deadlines," stressing that "[n]o one ever gets all that they want, so compromise is expected" [*Id.*]

### C. Defendant's Efforts to Reach Compromise Agreement

In accordance with the Text Order, Defendant resumed its previous efforts to reach a compromise on Bryant's deposition and worked diligently to supplement its prior discovery responses and document production. The Text Order directed counsel to meet and confer by 3:00 PM on July 25, 2024, to discuss Bryant's deposition and expedite resolution of that matter. [*Id.*] Defendant coordinated and participated in that conference on July 25 with Plaintiff's counsel of record, Valerie Bateman and June Allison. In addition to discussing the parties' respective positions on Bryant's deposition, counsel also talked about the discovery issues Plaintiff had raised. During that conference, Defendant informed Plaintiff it was already working on supplementing its document production in accordance with the Text Order

### D. Plaintiff's Ongoing Refusal to Compromise on Terms of Deposition

Even after the Court provided another opportunity, Plaintiff still refused to agree to any limitations on Bryant's deposition. [Doc. 51-1 at p. 8] Additionally, Plaintiff reversed his previous agreement to depose Bryant remotely, and began instead insisting on an in-person deposition, even though Bryant was out of state and had limited

availability during time frame permitted by the re-opened discovery period. [Doc. 51-3 at ¶ 6.] *See also* [Doc. 38-3 at p. 1] ("**I am willing to do a remote deposition of Mr. Bryant . . .**"); [Doc. 51-1 at p. 4] (**"I don't want to take his deposition remotely."**). Plaintiff offered no explanation for this reversal in position and identified no prejudice that would result from taking the deposition remotely.

Plaintiff insisted on proceeding with Bryant's deposition without agreeing in advance on the terms. [*Id.* at p. 8] (" … we disagree with your limitations and want to go forward with the deposition knowing that you want to limit it. However, you are not entitled to condition going forward with the deposition on our agreeing with your limits."; "… I am not going to agree ahead of time to any limits on the deposition. This is the same position I've had since we began discussing his deposition."). Plaintiff took the position that no compromise was necessary, as "the absence of a protective order makes it incumbent upon [Defendant] to decide what limits [Defendant] want[s] to impose and then defend those to the court, if [Plaintiff] decide[s] to challenge them **after** the deposition." [*Id.*] (emphasis in original). Plaintiff maintained Defendant "c[ould], of course, object and, if [it] deem[s] appropriate, instruct [Bryant] not to answer." *Id.*

Not only was Plaintiff's position at odds with the Text Order, which directed the parties to compromise on the terms, but the procedural rules and this Court's prior decisions do not authorize Defendant to dictate the limitations on a deposition, absent an agreement with Plaintiff or Order of the Court. *See Howard v. City of Durham*, No. 1:17CV477, 2021 WL 5086379, at *10 (M.D.N.C. Nov. 2, 2021) ("One who instructs a

8

witness not to answer in this district should tread lightly. The Local Rules of this court, which all admitted lawyers attest they have read and will follow, limit the bases on which counsel can direct a witness not to answer a question posed during a deposition to either **privilege** or a limitation on evidence **directed by the court**.") (emphasis added).

Plaintiff issued a notice scheduling Bryant's deposition on August 12, 2024, at the office of Plaintiff's counsel in Carrboro, North Carolina. [Doc. 51-2.] This necessitated Defendant's Second Motion for Protective Order [Doc. 51], which was granted. [Text Order Aug. 27, 2024.]

### E. Defendant's Supplemental Document Production

On August 1, 2024, Defendant sent an email[3] to Plaintiff's counsel forwarding Defendant's Supplemental Response to Plaintiff's First Request for Production of Documents, Defendant's Second Supplemental Response to Plaintiff's Second Request for Production of Documents and Other Things, Defendant's Second Supplemental Response to Plaintiff's First Set of Interrogatories, and Defendant's Supplemental Privilege Log. *See* Appendix Exhibit 1, Declaration of Linda Hooker at ¶ 2; Hooker Ex. A.[4] In both the forwarding email and an accompanying letter, Defendant informed Plaintiff's counsel they should expect to receive that day, by separate email, a link to download the supplemental document production:

---

[3] The parties agreed that documents not served through the Court's electronic filing system may be served by electronic mail and shall be deemed received on the date the email is sent. [Doc. 26.] Accordingly, service by email is appropriate pursuant to Fed. R. Civ. P. 5(b)(2)(E).

[4] Appendix Exhibits referenced herein are contained in a separately filed appendix.

> You will receive today a separate email providing a link enabling you to download Defendant's supplemental document production (DEF-0005769-DEF-0008050). Defendant provides these supplementations, subject to and without waiving its objections, for purposes of addressing discovery issues raised by Plaintiff and complying with the Court's Text Order issued on July 24, 2024. Please let us know if you have any difficulties accessing the materials.

*See* Appendix Exhibit 1, Hooker Exs. A-B. That same day, Defendant transmitted to Plaintiff's counsel a link enabling them to access the document production, comprising 2,282 pages, through its law firm's secure file transfer system. *Id*. at ¶ 6.

Defendant's August 1, 2024 letter addressed, in detail, discovery issues raised by Plaintiff in response to Defendant's Motion for Protective Order [Doc. 50]. *See* Appendix Exhibit 1, Hooker Exs. A-B. Plaintiff had represented to the Court that Defendant produced certain documents multiple times without labeling them to correspond to specific discovery requests, but Defendant's research indicated that was not true. *Id*. (referencing Doc. 50 at pp. 9-10, 28.) As stated in the August 1, 2024 letter, every single document Plaintiff had identified as "Produced but not indicated as responsive to any RPD or INT" had, in fact, been specifically identified as responsive to one or more of Plaintiff's discovery requests. *Id*.

After business hours on August 11, 2024, Ms. Bateman emailed Defendant stating, in relevant part, "[P]lease advise whether Defendant has produced all the documents in the format in which Defendant intends to produce them and with all of the explanation of how the documents were maintained in the ordinary course of business that Defendant intends to provide." *See* Exhibit 4, E-Mail Correspondence Between Counsel at p 1. The next day, Defendant replied:

Case 1:22-cv-00847-LCB-JLW   Document 63   Filed 09/12/24   Page 10 of 27

> As stated in the August 1, 2024 letter accompanying Defendant's supplemental document production and discovery responses, those supplementations address the discovery issues raised by Plaintiff and comply with the Court's July 24, 2024 Text Order. In accordance with Fed. R. Civ. P. 34(E)(i), the supplemental discovery responses identify which documents correspond with each request.
>
> If you have any questions about a specific discovery response or document, please let me know.

*Id*. Ms. Allison was copied on this email exchange. *Id*. Defendant received no further communication from Plaintiff about the supplemental discovery responses or document production.

As it now appears, Plaintiff's counsel never accessed or downloaded the supplemental document production that Defendant sent six weeks ago. *See* Appendix Exhibit 1 at ¶¶ 6-8; Hooker Exs. G-H. The confirmation and delivery details show the email transmitting the link to the document production was "encrypted and sent successfully" on August 1, 2024 to Ms. Bateman and Ms. Allison at their respective email addresses, but neither of Plaintiff's attorneys have opened the email or downloaded the documents in the six weeks that have since elapsed. *Id*. Nor have they taken any action to follow up on Defendant's e-mail on August 1, 2024, inviting them to inform Defendant if they had any specific questions about the document production.

## ARGUMENT AND AUTHORITIES
### Rule 56(d) Standards

Rule 56(d) provides "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

11

declarations or to take discovery; [or] (3) issue any other appropriate order. Fed. R. Civ. P. 56(d). The party moving to postpone summary judgment proceedings bears the burden of demonstrating the Rule's prerequisites for relief have been met. *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015).

A Rule 56(d) motion should be granted "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (internal citation omitted). However, a court may deny a motion under Rule 56(d) where the information sought would not, by itself, create a genuine issue of material fact sufficient for the nonmovant's claims to survive summary judgment. *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014). Rule 56(d) "does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of unlawful conduct." *Estate of Rahim v. Doe*, 51 F.4th 402, 411 n.11 (1st Cir. 2022); *see also Agelli v. Sebelius*, No. DKC 13-497, 2014 WL 347630, at *10 (D. Md. Jan. 30, 2014) (denying Rule 56(d) request as a "fishing expedition" where the plaintiff's purported need for depositions amounts to a "pure speculative hope" that witnesses will recant their sworn declarations and other employees will reveal a "long-running plan" not to promote plaintiff because of her age).

Moreover, "[a] nonmoving party does not receive Rule 56(d) protection where [he] had an opportunity to conduct discovery but chose not to do so." *Patrick v. PHH Mortg. Corp.*, 998 F. Supp.2d 478, 485 (N.D. W.Va. 2014); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 478 (4th Cir. 2018). After all, Rule 56(d) "is designed to minister to

12

the vigilant, not to those who slumber upon perceptible rights." *Pina v. Children's Place*, 740 F.3d 785, 794-95 (1st Cir. 2014).

I. **The Rule 56(d) Declaration is not authoritative, and instead contains speculative and demonstrably inaccurate statements.**

An affidavit or declaration submitted under Rule 56(d) must be "authoritative," i.e., "based on firsthand knowledge of why the request is necessary." *C.B. Trucking, Inc. v. Waste Mgmt., Inc.*, 137 F.3d 41, 44 n. 2 (1st Cir. 1998). "Speculative conclusions, unanchored facts, are not sufficient to ground a [Rule 56(d)] motion." *Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7, 12 (1st Cir. 2007).

Here, Plaintiff relies on the Rule 56(d) Declaration of his counsel, which addresses matters that plainly extend beyond the personal knowledge of the declarant. Substantial portions of the Declaration comprise "factual" assertions that are purely speculative and only sporadically anchored with citations to record evidence. Some of the attestations are patently untrue.

For example, the Declaration repeatedly and incorrectly states that Bryant directly supervised Hazziez, as Vice President of Supply Chain, even after Bryant's interim tenure in that role ended. [Doc. 61 at ¶ 7 (referencing Bryant being "in the organizational chart above Hazziez" in March 2020); ¶ 15 (stating that Hazziez, "under the supervision of Will Bryant," placed Van Dyck in an interim director position in August 2020); ¶ 19 (alleging that Hazziez "replaced Bryant, but was supervised [by] him"); ¶ 31 (alleging Bryant "still oversaw and was involved in the Supply Chain section" even after his interim tenure as Vice President of Supply Chain ended).] Based on these inaccurate

13

assertions, Plaintiff contends Bryant's testimony is critical to, among other things, Plaintiff's challenge of Defendant's stated reasons for "the nonselection of Plaintiff for the position for which Josh Van Dyke [sic] was selected in April 2021." [*Id.* at ¶ 5.]

The Declaration cites no basis for Plaintiff's assertions, but the Brief in Support of Plaintiff's Rule 54(b) Motion to Reconsider inaccurately casts Bryant as "a decision maker" as to the allegedly discriminatory promotion in April 2021 [Doc. 59 at p. 3] and contains an explanation of sorts:

> Given that Bryant was involved in the process to select Hazziez [ ] and Bryant reported to Mark Miller at that time, whose title was Senior VP for Finance for Defendant [ ], it is also presumed that Hazziez when he was hired, and Bryant returned to his position, that Bryant then supervised Hazziez.

[*Id.* at pp. 11-12.] Plaintiff goes on to hypothesize:

> Bryant's linked in [sic] profile indicates that he served as Chief Financial Officer for Defendant from February 2020 to February 2022, thus showing that he was, like Miller had been for him, Clinton Hazziez's supervisor as head of the Supply Chain organization.

[*Id.* at p. 12.] Based entirely on these cobbled together assumptions and bits of information, Plaintiff concludes, "Thus, Bryant can be presumed to have been intimately involved as both Plaintiff's indirect supervisor, and Hazziez's direct supervisor, for the second December 2020 posting, for which Josh Van Dyke [sic] was selected." [*Id.*]

These assertions, now memorialized in the Rule 56(d) Declaration, are both speculative and false. In fact, Bryant never supervised Hazziez or any other Vice President of Supply Chain who succeeded him. *See* Appendix Exhibit 2, Declaration of Barbara Kaufmann at ¶¶ 6-11. Rather, Hazziez reported directly to John Lewis, as did

Tracy Parham, who oversaw Supply Chain on an interim basis following Hazziez's departure. *Id.* at ¶¶ 6, 8. Michael Bianchin, who has been Assistant Vice President of Supply Chain since November 28, 2022, reports to Parham. *Id.* at ¶ 10.

Particularly given this uncontroverted evidence, the baseless conjecture of Plaintiff's counsel is insufficient to counter Bryant's sworn declaration stating he "did not in any way participate in the decision to post the Director of Sourcing and Contracting position within Supply Chain in 2020," he did not "in any way participate in the decision to promote Josh Van Dyck into that position," he "provided no input on the promotion decision to the interview panel, to the hiring manager, or Mr. Hazziez," and he "took no part whatsoever in the promotion decision." [Doc. 51-3 at ¶ 5.]

The Declaration is unreliable even on topics within the personal knowledge of Plaintiff's counsel, such as the discovery process in this litigation. The Declaration inaccurately states, "Defendant has resisted producing documents about any event other than Plaintiff's March/April 2021 nonselection for the supply chain director position filled by Josh Van Dyck." [Doc. 61 ¶ 4]. In fact, Defendant produced during discovery thousands of pages of documents, many of which pertain to employment-related events preceding the challenged promotion decision, and further supplemented its production on August 1, 2024.

The supplemental production contained some of the very documents counsel now claims Defendant refused to produce, including materials related to the other applicants for the System Director of Strategic Sourcing role posted in August 2019. *See, e.g.,*

15

Appendix Exhibit 1, Hooker Exs. C-E; Appendix Exhibit 3, Supplemental Declaration of Ryan Rotar at ¶ 2; Rotar Ex. I; *see also* [Doc. 61 at ¶¶ 22-25 (stating Defendant's counsel agreed at Ryan Rotar's deposition to "deal with the matter of the document production related to the names and applications of the individuals who applied for the . . . position," but later "opposed the production of these documents").] Had Plaintiff's counsel downloaded these documents, she would have had them six weeks ago.

Notably, this is not the first time in these proceedings Plaintiff's counsel has made inaccurate or misleading statements in filings with the Court. During the July 24, 2024 conference, Plaintiff attributed to "inartful pleading" inconsistencies between Plaintiff's representation on May 2, 2024, that the parties "h[ad] completed written discovery" but needed an extension of the discovery period for the limited purpose of conducting "third party depositions" [Doc. 32 at ¶¶ 6, 9], and Plaintiff's more recent request, in response to Defendant's Motion for Protective Order, that the Court compel Defendant to produce its CFO for deposition and to "respond fully to Plaintiff's discovery requests." [Doc. 50; Text Order July 24, 2024 (referencing "inartful representations to the Court by Plaintiff's counsel").] Moreover, this Court previously cautioned Plaintiff's counsel that a filing in another case "c[ame] dangerously close to running afoul of Rule 11 of the Federal Rules of Civil Procedure." *Hoelzer v. Bd. of Governors of Univ. of N.C.*, No. 1:20CV1072, 2023 WL 2477510, at *5 n. 2 (Mar. 13, 2023).

## II. Plaintiff failed to diligently pursue discovery (or, in the case of the allegedly deficient document production, to download the materials provided).

Plaintiff had every opportunity to obtain the discovery that he now claims he has been unable to procure. In fact, the Court re-opened discovery expressly for this purpose. Defendant made repeated efforts to enable Plaintiff to complete the discovery he seeks (and, in the case of the allegedly missing documents, produced them to Plaintiff). Plaintiff does not offer a persuasive explanation for failing to complete the discovery, and his lack of diligence renders Rule 56(d) relief unwarranted.

First, Defendant repeatedly tried to work with Plaintiff to negotiate terms that would enable Bryant's deposition to proceed. Plaintiff did not avail himself of this opportunity, even though the Text Order provided abundant notice this would be his last opportunity to obtain the discovery prior to summary judgment and trial. [Text Order July 24, 2024 (the parties "shall make efforts to find a mutual resolution of their discovery-related disputes as there will be no further extension of [the] deadlines."] Particularly given Bryant's limited involvement in the matters at issue, Plaintiff cannot establish he was denied the opportunity to obtain the discovery. *See Gordon*, 890 F.3d at 478 (district court did not abuse its discretion in denying the plaintiff's Rule 56(d) motion where the defendant agreed to allow significant discovery on certain limited topics, but the plaintiff's counsel declined to take advantage of this opportunity due to the "significant gap" between the discovery the defendant offered and what the plaintiff wanted).

Plaintiff also demonstrated a lack of diligence in failing to access or download the 2,000-plus pages of documents produced on August 1, 2024, which would have remedied

17

the supposed "discovery deficiencies" raised in Plaintiff's Rule 56(d) Declaration. Plaintiff's counsel had previously used the same secure file transfer system to download materials produced in this case, as evidenced by other filings. [Doc. 50 at pp. 4-5, 11.] The Declaration offers no credible explanation why counsel did not do so in this instance.

Ms. Bateman might assert she overlooked the August 1, 2024 transmittal, as she has claimed regarding an ECF notice issued in the same time frame,[5] but it is difficult to fathom how the supplemental document production could have been missed. Both of Plaintiff's counsel were told during the "meet and confer" discussion on July 25, 2024, that a supplemental document production would be forthcoming. They both received an e-mail and accompanying letter on August 1, 2024, notifying them that an email containing a link to access the supplemental production would be sent. The letter referenced the document production by Bates numbers, as did the supplemental discovery responses themselves. Counsel's email on August 11, 2024, suggests she was aware of the supplemental document production. If any doubt remained, Defendant's reply on August 12, explicitly referencing the "August 1, 2024 letter accompanying Defendant's

---

[5] In arguing Plaintiff's failure to file a timely response to Defendant's Second Motion for Protective Order [Doc. 51], filed on August 6, 2024, constituted excusable neglect, Ms. Bateman claims she "did not see the filed motion" and thus "was unaware of [it]." [Doc. 59 at pp. 2, 7.] Even if she missed the ECF notice, Defendant's email on August 9 provided ample notice: "UNC Health has already filed a motion for protective order asking that the deposition not proceed, or if it does, that it proceed in accordance with the terms proposed by UNC Health." Appendix Exhibit 4 at p. 2. Ms. Bateman's reply on August 11, well before the August 20 response deadline, leaves no doubt she was aware of the motion: "We will proceed with filing our response to the motion for a protective order and a renewed motion to compel with the Court." *Id*. at p. 1.

supplemental document production and discovery responses" should have provided ample notice.

Plaintiff's marked lack of diligence in obtaining the discovery allegedly needed, despite the Court's and Defendant's efforts to afford him an opportunity to do so, warrants the denial of Rule 56(d) relief. *Gordon*, 890 F.3d at 478; *see also Hodgin v. UTC Fire & Security Americas Corp., Inc*., 885 F.3d 243, 250 (4th Cir. 2018) (district court did not abuse its discretion in denying the plaintiffs Rule 56(d) motion where, among other things, they had a reasonable opportunity to take the depositions they claimed to need and failed to act diligently to do so).

### III. Plaintiff failed to identify specific facts he was unable to discover that are essential to create a material fact issue.

The Declaration fails to show, as required by Rule 56(d), "that, **for specified reasons**, [Plaintiff] cannot present **facts essential to justify [his] opposition**" to Defendant's summary judgment motion. Fed. R. Civ. P. 56(d) (emphasis added). To the contrary, the Declaration largely relies on broad assertions that more discovery is needed, without identifying specific documents or facts needed to create a genuine issue for trial.

The Declaration states, in a conclusory manner, that Defendant's alleged "refusal to produce documents sought by Plaintiff" and "to produce [Bryant] for deposition" have precluded Plaintiff from obtaining the evidence needed to rebut the reasons articulated by Defendant for rejecting Plaintiff for positions for which he was more than qualified." [Doc. 61 at pp. 19-21.] It further asserts, "Without the documents sought from Defendants, Plaintiff could not interview other potential witnesses to procure affidavit

19

testimony to refute Defendant's allegations on summary judgment." [*Id.*] Generalized assertions of this nature lack "specified reasons" and fail to invoke Rule 56(d) protections. *See Patrick*, 998 F. Supp.2d at 484-86 (denying Rule 56(d) motion in part because party's declaration contained "vague," "broad assertions: and simply showed "Plaintiffs may desire additional evidence to support their claims").

The documents Plaintiff allegedly needs, however, are described in admittedly general terms, e.g., "documents . . . concerning the reason(s) Defendant declined to select Plaintiff for the supply chain director position first posted in August/September 2019 . . . and then re-posted in December 2020, and which he was denied again in March/April 2021." [Doc. 61 at ¶ 3]. Plaintiff also seeks Bryant's testimony and "the production of documents related to the hiring process of other positions between June 2019 . . . and April 2021 . . . [to] show that the heavy reliance by Defendant on the Hiring for Excellence process was simply subterfuge for using a process that was intended from its beginning to select anyone but Jack Sullivan, the Plaintiff, who was in the opinion of Defendant, an unsuitably older applicant whose time had come and gone in the Supply Chain organization.." [*Id.* at ¶ 28]. Plaintiff essentially argues he is entitled to discovery regarding every hiring decision at UNC Health over the course of almost three years in the hope he might find some evidence of pretext.

The only materials even arguably identified with any degree of specificity is "the document production related to the names and applications of the individuals who applied for the same position as Plaintiff" (presumably the Director of Strategic Sourcing position

20

posted in August 2019, as referenced in the preceding paragraphs). [*Id*. at ¶ 24.] These materials were included in Defendant's supplemental document production on August 1, 2024, which Plaintiff's counsel has yet to download. *See, e.g*., Appendix Exhibit 1, Hooker Exs. C-E; Appendix Exhibit 3, Supplemental Declaration of Ryan Rotar at ¶ 2; Rotar Ex. I. As described previously, Plaintiff cannot premise his Rule 56(d) request on the need to conduct discovery that was produced to him within the re-opened discovery window, but due solely to his own counsel's lack of diligence, he has not obtained.

Nor has Plaintiff demonstrated how the facts on which he seeks additional discovery are necessary to create a genuine issue for trial. Rather than assert that certain facts are "essential" for Plaintiff's summary judgment opposition, the Declaration merely alleges that Bryant's testimony is "relevant." [Doc. 61 at ¶¶ 4, 6.] Relevance is not the standard under Rule 56(d), and Plaintiff may not rely on its protection to conduct a fishing expedition in search of evidence supporting his theory. *See Agelli*, 2014 WL 347630, at *10.

To justify Rule 56(d) relief based on Bryant's deposition, the Declaration makes unfounded and inaccurate assertions about his alleged involvement in the April 2021 promotion decision. As stated previously, Plaintiff inaccurately asserts, contrary to all evidence of record, that Bryant supervised the Vice President of Supply Chain or otherwise oversaw the Supply Chain organization after his interim tenure ended in February 2020. [Doc. 61 at ¶¶ 7, 15, 19. 31.] Consequently, Plaintiff cannot credibly assert Bryant's testimony is "critical" to challenge Defendant's stated reasons for

employment actions in the Supply Chain, including, but not limited to, the April 2021 promotion decision at issue in this case. [*Id.* at ¶ 5.]

The Declaration also suggests the Director of Strategic Sourcing job posted under Bryant's interim oversight in August 2019 (and canceled under Hazziez's leadership in March 2020) is the same position as the Director of Sourcing and Contracting position posted in December 2020 and awarded to Van Dyck in April 2021. [*Id.* at ¶¶ 3, 7.] Not so. Even Plaintiff confirmed the accuracy of a side-by-side comparison showing the job descriptions and qualifications for the roles differed. *See* Appendix Exhibit 5, Deposition of John D. Sullivan at pp. 157-60, Ex. 21.

In fact, UNC Health determined Plaintiff did not fulfill the minimum job criteria for the Director of Strategic Sourcing job, which, unlike the Director of Sourcing and Contracting position awarded to Van Dyck, required seven years' experience in a hospital-based supply chain environment. *See* Appendix Exhibit 3 at ¶ 3, Rotar Ex. I. Although the Declaration alleges Plaintiff was the only internal applicant for the August 2019 job posting (and he was, in fact, the only internal applicant Rotar recalled during his deposition) [Doc. 61 at ¶ 3], Defendant's records show Plaintiff was not the only internal candidate who applied. Appendix Exhibit 3 at ¶ 3, Rotar Ex. I. Accordingly, Plaintiff lacks any basis for alleging his non-selection was "discriminatory" [Doc. 61 at ¶ 5] or otherwise specifically targeted Plaintiff.

The Declaration also references an email that Hazziez sent to Bryant and others, communicating that Hazziez would be submitting the Director of Sourcing and

Contracting position to the Shared Services Labor Committee for approval and referencing an "employee relations matter." [Doc. 61 at ¶ 7; Doc. 61-1.] Contrary to Plaintiff's assertion, however, that Bryant was "kept in the loop" about the potential posting of the position and even about a related employee relations matter does not contradict "Defendant's position that Bryant had no involvement in the selection process." [*Id.*] Bryant never declared he lacked any **knowledge of** the job posting; instead, his declaration states he did not **participate in** the decision to place Van Dyck in the role and provided no input into the selection decision. [Doc. 51-3 at ¶ 5.]

According to Plaintiff, Bryant's testimony is needed to "further explain" the background facts related to the Supply Chain reorganization that began under Bryant's leadership in 2019. [Doc. 61 at ¶¶ 12-14.] Plaintiff was told the 2019 reorganization was intended to "reduce a top heavy management structure," and he contends the organization charts from 2018 to April 2021 actually showed more positions at the top than before the reorganization. [*Id.*] The Declaration asserts this made the reasons provided Plaintiff for the reorganization pretextual [*Id.*], but the ongoing changes to the Supply Chain structure after Bryant left the organization does not demonstrate pretext or implicate Bryant. Although the Declaration states that the new organizational structure created by Bryant "continued under [ ] Hazziez" [Doc. at ¶ 18], the evidence shows that after joining UNC Health in February 2020, Hazziez, as the new VP of Supply Chain, began implementing his own vision and strategic plans for the Supply Chain organization. [Doc. 56-2 at ¶ 16.]

23

Consequently, the "future state" Supply Chain organization announced under Bryant's leadership in 2019 never took effect. [*Id.*]

The Declaration lists various personnel actions in the Supply Chain organization that allegedly occurred under Bryant's leadership [Doc. 61 at ¶¶ 9-13, 16-17, 28.] Although the *Morgan* opinion suggests an employee may use time-barred prior acts as "background evidence in support of a timely claim," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, the background evidence, to be discoverable, still must be relevant to the discrimination claim before the Court. A plaintiff may not seek discovery of "background evidence" that would solely serve to prove that a time-barred act was discriminatory. *Martinez Patterson v. AT&T Servs. Inc.*, No. C18-1180 RSM, 2019 WL 5294532, at *5 (W.D. Wash. Oct. 18, 2019). Moreover, even relevant background evidence should not be unlimited "given its supporting role relative to the allegations that are still viable in the case." *Effland v. Baltimore Police Dep't*, No. 1:20-cv-03503-CCB, 2024 WL 69581, at *2 (D. Md. Jan. 5, 2024) (internal quotation omitted).

Absent any nexus between Bryant and the allegedly discriminatory promotion decision in April 2021 (and none exists, as shown by Bryant's sworn declaration), some evidence regarding the "back story" during his Supply Chain tenure might, at best, be relevant background evidence. But, Plaintiff has not identified any information known by Bryant that would render his testimony "essential" within Rule 56(d)'s meaning, as it would not, by itself, create a genuine issue of material fact that would enable Plaintiff's claims to survive summary judgment. Fed. R. Civ. P. 56(d); *Pisano*, 743 F.3d at 93. That

24

is especially true where, as here, Bryant's testimony will likely duplicate the background evidence already obtained in discovery.

## CONCLUSION

UNC Health respectfully requests that the Court deny Plaintiff's request to defer summary judgment proceedings or deny Defendant's Motion for Summary Judgment pursuant to Rule 56(d). Plaintiff has been far from diligent, despite being afforded ample opportunities to obtain the discovery he claims to need. Moreover, Plaintiff failed to demonstrate that additional discovery would enable him to create a genuine issue of material fact. For these reasons, Plaintiff's Rule 56(d) request should be denied and summary judgment should be granted in UNC Health's favor.


This the 12th day of September, 2024.


**/s/ Jill S. Stricklin_____**
Jill S. Stricklin
NC State Bar No. 20145
Email
**/s/Nia K. Doaks_____**
Nia K. Doaks
NC State Bar No. 56472
Email: ndoaks@constangy.com
CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP
One West Fourth Street, Suite 850
Winston-Salem, NC 27101
Telephone: (336) 721-6860
Facsimile: (336) 748-9112

*Attorneys for Defendant*

25

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that the foregoing **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 56(d) DECLARATION** does not exceed 6,250 words, based upon the word count feature of the word processing software used to prepare the document, in compliance with Local Rule 7.3(d)(1).

This the 12th day of September, 2024.

<u>/s/ Jill S. Stricklin</u>
Jill S. Stricklin
N.C. State Bar No. 20145
Email: jstricklin@constangy.com
CONSTANGY, BROOKS,
SMITH & PROPHETE, LLP
One West Fourth Street, Suite 850
Winston-Salem, NC 27101
Direct: 336-721-6861
Facsimile: 336-748-9112

*Attorney for Defendant*

26

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 56(d) DECLARATION** with the Clerk of Court using the CM/ECF system which will send notification to the following:

Valerie L. Bateman
NEW SOUTH LAW FIRM
209 Lloyd Street, Ste 350
Carrboro, NC 27510
valerie@newsouthlawfirm.com

June K. Allison
NEW SOUTH LAW FIRM
233 S. Laurel Avenue
Charlotte, NC 28207
june@newsouthlawfirm.com

This the 12th day of September, 2024.

**/s/ Jill S. Stricklin**
Jill S. Stricklin
N.C. State Bar No. 20145
Email: jstricklin@constangy.com
CONSTANGY, BROOKS,
SMITH & PROPHETE, LLP
One West Fourth Street, Suite 850
Winston-Salem, NC 27101
Direct: 336-721-6861
Facsimile: 336-748-9112

*Attorney for Defendant*

27