UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:22-cv-847-LCB-JLW

| | |
|---|---|
| JOHN D. SULLIVAN, ) <br> ) <br> PLAINTIFF, ) <br> ) <br> v. ) <br> ) <br> THE UNIVERSITY OF NORTH ) <br> CAROLINA HEALTH CARE ) <br> SYSTEM, ) <br> ) <br> DEFENDANT. ) <br> _____ ) | DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINITFF'S RULE 54(b) MOTION TO RECONSIDER ORDER |

Defendant University of North Carolina Health Care System ("Defendant" or "UNC Health") files this response, pursuant to Local Rule 7.3(f), in opposition to Plaintiff's Rule 54(b) Motion to the Magistrate Judge to Reconsider Order [Doc. 58].

Plaintiff moves for reconsideration of the Text Order entered on August 27, 2024, to the extent the Court determined (i) Plaintiff failed to establish "excusable neglect" within the meaning of Rule 6(b)(1)(B) in connection with his failure to file a timely motion for extension of time to respond to Defendant's Second Motion for Protective Order Precluding the Deposition of CFO William Bryant [Doc. 52]; and (ii) granting Defendant's Motion for Protective Order based on relevancy and proportionality grounds under Rule 26(b)(1) of the Federal Rules of Civil Procedure. Plaintiff submits two separate briefs, one filed in support of his Rule 54(b) Motion [Doc. 59] and the other, attached as an exhibit to his Motion [Doc. 58-4] and incorporated by reference into his supporting brief as the

"response Plaintiff would have filed on August 27, 2024, had the Court not denied Plaintiff's motion." [*See* Doc. 59 at pp. 2-3.]

As further described below, the Court's determinations in its August 27, 2024 Text Order were well-founded in fact and law, and Plaintiff offers no legitimate basis for reversing them.

I.   **Plaintiff offers no credible basis for finding "excusable neglect."**

The Court's determination Plaintiff failed to establish excusable neglect within the meaning of Rule 6(b)(1)(B) was well-founded. Plaintiff concedes his Motion to Extend Time [Doc. 53] was filed after the response deadline expired on August 20, 2024. Consequently, the extension should be granted only if "good cause" is shown and the failure to act resulted from "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

"Excusable neglect is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996) (internal quotation omitted). The Supreme Court defined "neglect" to encompass "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The Court in *Pioneer* further defined "excusable" as "at bottom an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission," such as:

> the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including

> whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id*. The party seeking the extension bears the burden of demonstrating the neglect was excusable, and "a mere concession of palpable oversight or administrative failure generally has been held to fall short of the necessary showing." *Thompson*, 76 F.3d at 534 (internal quotation omitted).

Viewing all relevant circumstances, Plaintiff failed to demonstrate an extension was warranted by excusable neglect. As an initial matter, Plaintiff admittedly violated Local Rule 7.3(a) by failing to file a brief in support of his Motion. LR 7.3(a). This infraction, in and of itself, justified the Motion's denial. *See, e.g., Key v. Robertson*, 626 F.Supp.2d 566, 576-77 (E.D. Va. 2009) (denying motion for extension of time after deadline had expired where, among other things, the movant failed to attach a supporting memorandum as required by the local rules).

Additionally, Plaintiff offers no credible basis for determining his neglect was excusable. Four people at the law firm of Plaintiff's counsel, including Ms. Bateman and her co-counsel June Allison, received the Court's ECF notices regarding Defendant's Motion and the related response deadline. Although Ms. Bateman has served as lead counsel, Ms. Allison has also participated in this litigation. Ms. Allison attended the initial attorney's conference under Fed. R. Civ. P. 26(f) and, more recently, participated in the parties' video conference on July 25, 2024, to discuss the terms of Bryant's deposition as directed by the Court's Text Order issued on July 24, 2024. Plaintiff's Motion attempted

3

Case 1:22-cv-00847-LCB-JLW    Document 65    Filed 09/16/24    Page 3 of 15

to explain why Ms. Bateman overlooked the deadline, but it does not explain why all four people who received the notice, including Ms. Allison, failed to heed the electronic notification which conspicuously noted the established deadline.

Plaintiff asserts that due to family and personal health conditions, Ms. Bateman "did not see" Defendant's Second Motion for Protective Order [Doc. 58-3 at pp. 2-3; Doc. 59 at p. 7] and consequently "was unaware of the motion" [Doc. 59 at p. 2]. According to Plaintiff, Ms. Allison had no way of knowing Ms. Bateman was unaware of the motion. [Doc. 58-3 at p. 2; Doc. 59 at p. 2.]

Ms. Bateman's own e-mail correspondence, however, confirms she was aware of the pending motion as early as August 11, 2024—nine days before the August 20, 2024 response deadline—and planned to file a response. On August 9, 2024, Defendant sent an email to Plaintiff's counsel stating, "UNC Health has already filed a motion for protective order asking that the deposition not proceed, or if it does, that it proceed in accordance with the terms proposed by UNC Health." [Doc. 64-4 at p. 2.] Ms. Bateman's reply on August 11, 2024, leaves no doubt she knew about the Motion at that time: "We will proceed with filing our response to the motion for a protective order and a renewed motion to compel with the Court." [*Id*. at p. 1.] Ms. Allison was copied on this email exchange. [*Id*.]

Despite Ms. Bateman's knowledge of the pending Motion for Protective Order as early as August 11, 2024, and her stated intent to file a response, Plaintiff offers no explanation for failing to file a response to Defendant's motion or request additional time to do so prior to the response deadline of August 20, 2024. Nor does Plaintiff explain Ms.

4

Bateman's failure to communicate with her law partners or enlist her co-counsel's assistance if, for whatever reason, Ms. Bateman could not attend to the filing.

As Plaintiff has acknowledged, "the reason for the delay, including whether it was in the reasonable control of the movant," is the "most significant" of the *Pioneer* factors in determining whether neglect should be deemed "excusable." [Doc. 59 at p. 6]; citing *U.S. v. Manriques*, No,. 1:13CV444, 2013 WL 5592191, at *5 (M.D.N.C. Oct. 10, 2013) (internal citation omitted). The circumstances that led to the missed deadline were wholly within the control of Plaintiff's counsel; consequently, this consideration weighs heavily in Defendant's favor. *See Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 410-11 (4th Cir. 2010) (district court did not abuse its discretion in declining to vacate summary judgment award under Rule 59 where the plaintiff's counsel failed to receive electronic notice of the defendant's motion for summary judgment motion; "counsel cannot make the calculated choice to take no action with respect to his electronic inaccessibility … and then avail himself of discretionary relief from the consequences of that choice"); *Smith v. Look Cycle USA*, 933 F.Supp.2d 787, 788-89 (E.D. Va. 2013) (no excusable neglect shown where the plaintiff's counsel cited computer virus problems as the reason for failing to act in a timely manner, but never contacted the court or opposing counsel prior to the deadline to indicate anticipated difficulties in timely filing).

Moreover, as the Court indicated in its ruling, the Court had re-opened discovery, *sua sponte*, on July 24, 2024, to "allow the parties an opportunity to resolve their outstanding discovery disputes prior to the time for summary judgment filings and trial." [Text Order July 24, 2024.] Specifically, the Court allowed the parties until August 14, 2024, to, among other things, "come to an agreement regarding the terms and conduct the deposition of UNC Health's Chief Financial Officer William Bryant." [*Id*.] The Court encouraged the parties to "work cooperatively . . . to find a mutual resolution of their discovery-related disputes as there will be no further extension of said deadlines," stressing "[n]o one ever gets all that they want, so compromise is expected." [*Id*.]

Plaintiff failed to avail himself of this opportunity, despite the Court's express warning that the summary judgment deadlines would not be extended. Contrary to the Court's directives, Plaintiff refused to compromise on any of the terms for Bryant's deposition, and began insisting that the deposition take place in person, even though Bryant was traveling out of state during the limited window to complete his deposition and Plaintiff had previously agreed to take the deposition remotely.[1] [*See* Doc. 63 at pp. 7-9.] During the parties' "meet and confer" discussions, Plaintiff's counsel offered no

---

[1] Plaintiff contends the unavailability of Defendant's counsel contributed to the compressed discovery period [Doc. 58-4 at p. 9], but this is not true. Defendant informed Plaintiff that Bryant's schedule limited the scheduling opportunities, and due to Bryant's travel schedule, the deposition would need to be conducted remotely. [Doc. 51-1 at p. 3.]

6

explanation for this reversal, asserting only, "I don't want to take his deposition remotely."[2] [Doc. 51-1 at p. 4.] Plaintiff chalks up his change in position to the "vicissitudes of litigation" [Doc. 58-4 at p. 2], but this characterization misses the point. The Court expressly ordered the parties to make good faith efforts to reach a compromise on the terms of Bryant's deposition. Rather than abiding by the Court's directive, Plaintiff not only refused to consider any limitations on Bryant's deposition, in consideration of the proportionality concerns raised by Defendant, but also reneged on the one compromise he had previously agreed to make.

Plaintiff's failure to act diligently and consider any compromise that would enable him to proceed with Bryant's deposition during the re-opened discovery period, after the Court expressly warned "there will be no further extension of said deadlines," constitutes another basis for declining to excuse Plaintiff's neglect. Compounding matters, Defendant's summary judgment motion is now pending, and instead of filing a substantive response, Plaintiff has filed a Rule 56(d) Declaration [Doc.60] on the basis that he needs to depose Bryant along with a Motion for Extension of Time [Doc. 60] to respond substantively to Defendant's motion. Not only has Plaintiff needlessly multiplied the

---

[2] Plaintiff now offers *post hoc* reasons for deposing Bryant in person, rather than remotely. [Doc. 51-1 at p.11.] Plaintiff asserts, for example, that the deposition would require multiple exhibits and counsel needed to observe Bryant's expressions and responses to the questions Plaintiff intends to ask. [*Id.*] None of these reasons would have warranted an alteration of Bryant's travel schedule, even if Plaintiff had presented them, given the abbreviated window for completing the deposition and Bryant's lack of involvement in the promotion decision at issue.

proceedings, increasing Defendant's costs and negatively impacting the interests of judicial economy, but Plaintiff's ongoing delay tactics threaten to disrupt the Court's pretrial schedule, given the February 2025 trial setting.

Appealing generally to equitable considerations, Plaintiff argues Bryant's deposition is "critical to Plaintiff's case." [*Id*. at p. 8.] In making this assertion, Plaintiff primarily relies on his unfounded and inaccurate assertion that Bryant was a "decision maker as to both the positions denied Plaintiff in this matter which are being challenged as discriminatory on the basis of age." [Doc. 59 at p. 3.]

Bryant has declared under oath that he did not participate in April 2021 promotion decision [Doc. 51-3], and Plaintiff presents no evidence to the contrary. In fact, Plaintiff's decisionmaker theory hinges on his counsel's speculation, based solely on assumptions and bits of unrelated information, that Bryant directly supervised Vice President of Supply Chain Clinton Hazziez, who oversaw the promotion decision at issue in April 2021. [*Id*. at pp. 11-12.] UNC Health has debunked this conjecture by submitting a sworn declaration showing Bryant never supervised Hazziez or any other Vice President of Supply Chain who succeeded him. [Doc. 64.2 at ¶¶ 6-11.]

Moreover, the only allegedly discriminatory employment action before the Court is the denial of a promotion to Plaintiff in April 2021. [*See* Doc. 1 at ¶¶ 8-9; Doc. 20.] Plaintiff did not allege in his Complaint any cause of action for discrimination based on UNC Health's failure to place him in the position posted under Bryant's leadership on August

8

2019. Even if he had, any such claim would be subject to dismissal due to Plaintiff's failure to exhaust his administrative remedies by filing a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, just like the procedurally barred demotion-based claim that the Court has dismissed. [Doc. 20.]

As the record evidence shows, no one was placed in the director role that was posted in August 2019; instead, Rotar never completed the interview and selection process, and the job requisition was canceled in March 2020 after Hazziez became Vice President of Supply Chain. [Doc. 56-2 at ¶¶ 15-17.] Although Plaintiff argues it is "inexplicable" that he was not selected and the position remained unfilled [Doc. 59 at p. 11], the evidence shows Plaintiff was among several applicants, both internal and external, and he did not meet the position's minimum qualifications for the role due to his lack of seven years' experience in a hospital-based supply chain environment. [Doc. 64-3 at ¶¶ 1-3, Ex. I.]

Given these facts, Plaintiff has failed to demonstrate any legitimate basis for the Court to reconsider or modify its determination that Plaintiff failed to demonstrate excusable neglect. If anything, Plaintiff's reliance on misleading and demonstrably false assertions, as described throughout this brief, indicates a lack of good faith and provides another basis for declining to find excusable neglect. *See Fernandes v. Crain*, 538 Fed. Appx. 274, 276 (4th Cir. 2013) (listing "whether the movant acted in good faith" as one of the factors in determining whether neglect is "excusable") (citation omitted).

9

## II. No basis exists for reversing the Text Order precluding Bryant's deposition on relevancy and proportionality grounds.

Plaintiff argues that the Court's finding that Bryant's deposition should be precluded based on relevancy and proportionality grounds under Rule 26 is "dead wrong" and therefore qualifies for reversal "to correct a clear error of law or prevent manifest injustice." [Doc. 59 at pp. 9-10.] In making this argument, Plaintiff fails to squarely address the proportionality concerns cited by Defendant and relied upon by the Court.

Recognizing that the Fourth Circuit has neither adopted nor rejected the apex doctrine, which would create a rebuttable presumption that the deposition of a high-ranking officer of a party constitutes an annoyance or undue burden within the meaning of Rule 26(c)(1), this Court has held that disputes regarding the deposition of a high-ranking executive may be resolved based on the proportionality principles of Rule 26(b)(2)(C). *Trustees of Purdue Univ. v. Wolfspeed, Inc.*, No. 1:21CV840, 2023 WL 4564558 (M.D.N.C. July 17, 2023). Unlike the apex doctrine, Rule 26's proportionality standards do not require the executive to lack knowledge of relevant facts; rather, the Rule accounts for "the simple fact that [just because] requested information is discoverable under Rule 26(a) does not mean that discovery must be had." *Id.* (quoting *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)).

Under Rule 26(c), the Court retains an independent obligation to "limit the frequency or extent of discovery ... if it determines that ... the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is

10

more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff fails to establish that proportionality considerations, in balance, justify Bryant's deposition in the case at hand. To the contrary, Plaintiff's arguments underscore the correctness of the Court's ruling.

Plaintiff challenges Defendant's attestation that Bryant took no part in the April 2021 promotion decision and any background evidence he could provide would be of nominal, if any, probative value. [Doc. 59 at pp. 9-10.] Relying solely on unsubstantiated speculation, Plaintiff alleges that Bryant supervised Hazziez and "[t]hus Bryant can be presumed to have been intimately involved as both Plaintiff's indirect supervisor, and Hazziez's direct supervisor, for the second December 2020 positing, for which Josh Van Dyke [sic] was selected." [Doc. 59 at pp. 11-12.] As stated in the previous section of this brief, Defendant provided a sworn declaration showing Bryant did not supervise Hazziez or any other successor overseeing Supply Chain. [Doc. 64-2 at ¶¶ 6, 8, 10.] Plaintiff's conjecture about Bryant's purported oversight during Hazziez's tenure warrants no consideration.

Plaintiff also recounts a series of personnel actions that took place during Bryant's interim leadership over the Supply Chain organization, including the August 2019 job posting described above. [Doc. 59 at pp. 10-11.] Plaintiff fails to establish that Bryant's testimony regarding this background evidence would be relevant to the allegedly discriminatory failure to promote in April 2021 or highly probative of his claims. In fact,

11

this is precisely the sort of background evidence that has limited probative value to the matters at issue.

Although the Supreme Court's opinion in *Morgan* suggests an employee may use time-barred prior acts as "background evidence in support of a timely claim," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, the background evidence, to be discoverable, still must be relevant to the discrimination claim before the Court. Based on these principles, courts have limited the background evidence that a plaintiff may obtain in discovery or introduce to support his claims. *Effland v. Baltimore Police Dep't*, No. 1:20-cv-03503-CCB, 2024 WL 69581, at *2 (D. Md. Jan. 5, 2024) (even relevant background evidence should not be unlimited "given its supporting role relative to the allegations that are still viable in the case") (internal quotation omitted); *Martinez Patterson v. AT&T Servs. Inc.*, No. C18-1180 RSM, 2019 WL 5294532, at *5 (W.D. Wash. Oct. 18, 2019) (plaintiff may not seek discovery of "background evidence" that would solely serve to prove that a time-barred act was discriminatory). Here, Bryant's testimony about events during his interim tenure as Vice President of Supply Chain would have no bearing on whether different decisionmakers acted with discriminatory animus when choosing to promote another candidate over Plaintiff in April 2021.

Given these circumstances, and especially considering the limited probative value of Bryant's testimony as to the discrete promotion decision at issue, Bryant's deposition would be unreasonably duplicative, cumulative, and disproportional to the needs of the

case. *Trustees of Purdue Univ.*, 2023 WL 4564558, *4; *Page v. Bragg Communities, LLC*, No. 5:20-CV-336-D, 2023 WL 5418716, at *3 (E.D.N.C. Aug. 22, 2023). To the extent the earlier events provide necessary context for the promotion decision at issue, Plaintiff has had ample opportunity to obtain that information from other sources, including the depositions of UNC Health's corporate representative, Mike Bianchin, and Ryan Rotar, who held various Supply Chain roles throughout Bryant's interim tenure.

## CONCLUSION

For the reasons stated above, the Court should decline to alter its Text Order issued on August 27, 2024, which was in all respects well-founded in fact and law.

This the 16th day of September, 2024.

                **/s/Jill S. Stricklin**
                Jill S. Stricklin
                NC State Bar No. 20145
                Email: jstricklin@constangy.com
                **/s/Nia K. Doaks**
                Nia K. Doaks
                NC State Bar No. 56472
                Email: ndoaks@constangy.com
                CONSTANGY, BROOKS, SMITH &
                PROPHETE, LLP
                One West 4 Street, Suite 850
                Winston-Salem, NC 27101
                Telephone: (336) 721-1001
                Facsimile: (336) 748-9112

                *Attorneys for Defendant*

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINITFF'S RULE 54(b) MOTION TO RECONSIDER ORDER** does not exceed 6,250 words, based upon the word count feature of the word processing software used to prepare the document, in compliance with Local Rule 7.3(d)(1).

This the 16th day of September, 2024.

                                              **/s/Jill S. Stricklin**
NC State Bar No. 20145
Jill S. Stricklin
Email: jstricklin@constangy.com
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
One West 4 Street, Suite 850
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112

*Attorney for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINITFF'S RULE 54(b) MOTION TO RECONSIDER ORDER** with the Clerk of the Court using the CM/ECF system which will send notification to the following:

| | |
|---|---|
| Valerie L. Bateman | June K. Allison |
| NEW SOUTH LAW FIRM | NEW SOUTH LAW FIRM |
| 209 Lloyd Street, Ste 350 | 233 S. Laurel Avenue |
| Carrboro, NC 27510 | Charlotte, NC 28207 |
| valerie@newsouthlawfirm.com | june@newsouthlawfirm.com |

This the 16th day of September, 2024.

    **/s/Jill S. Stricklin**
NC State Bar No. 20145
Jill S. Stricklin
Email: jstricklin@constangy.com
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
One West 4 Street, Suite 850
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112

*Attorney for Defendant*