IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN D. SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22-CV-847 |
| | ) | |
| THE UNIVERSITY OF NORTH CAROLINA HEALTH CARE SYSTEM, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

John Sullivan filed suit against the University of North Carolina Health Care System asserting that he was first demoted and later not promoted in violation of the Age Discrimination in Employment Act. His claim based on a 2019 demotion was dismissed for failure to exhaust administrative remedies. UNC Health now moves for summary judgment on the remaining claim, Doc. 55, based on allegations that UNC Health denied him a promotion in April 2021 because of his age. Because Mr. Sullivan has not presented evidence from which a factfinder could conclude that age discrimination was the reason he was not promoted, UNC Health's motion will be granted.

Mr. Sullivan also moves to amend his complaint to add a retaliation claim. Doc. 86. Because he delayed filing the motion until well after the deadline in the scheduling order, despite knowledge of the alleged facts supporting that claim, he has not shown good cause. The motion to amend will be denied.

I.      Facts

All facts and reasonable inferences therefrom are stated in the light most favorable to the non-movant, Mr. Sullivan. *See generally Landholt v. Corley*, 149 F.4th 486, 489 (4th Cir. 2025).

Mr. Sullivan began work for UNC Health in 2017 in the Supply Chain department. Doc. 56-1 at 15–16. As part of a 2019 reorganization, UNC Health created the new position of System Director of Strategic Sourcing. Doc. 56-2 at ¶ 15. Mr. Sullivan and others applied. Doc. 56-1 at 52–53, 54. The position was not filled, and the job listing was cancelled in 2020. *Id.* at 54–55; Doc. 56-2 at ¶ 17.

Later, in December 2020, UNC Health sought applicants for the new position of Director of Sourcing and Contracting. Doc. 56-2 at ¶ 20; Doc. 56-1 at 60. Sullivan, then approximately 60 years old, applied. Doc. 21 at ¶ 27; Doc. 56-1 at 59, 61. A hiring committee interviewed Sullivan and two other applicants. Doc. 56-2 at ¶ 23–24. All committee members used a rating grid to rate the three candidates, and Mr. Sullivan scored much lower than the other two. *Id.* at ¶ 26–27. One of the other candidates, J.V.D., was offered the position and he accepted. *Id.* at ¶ 35. J.V.D. was 44 years old at the time. Doc. 21 at ¶ 27.

Additional facts and evidence will be discussed in connection with specific issues.

II.     The Age Discrimination Failure to Promote Claim

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's age." 29 U.S.C. § 623(a). "[A]n employee may make out an ADEA claim using either direct or circumstantial evidence." *Westmoreland v. TWC Admin. LLC,* 924 F.3d 718, 725 (4th Cir. 2019). Claims grounded in circumstantial evidence are analyzed using the familiar *McDonnell Douglas* burden-shifting framework. *Id.*

To establish a prima facie case of discrimination under the ADEA in a failure to promote claim, a plaintiff must establish: (1) he was a member of a protected class; (2) he applied for an open position and was qualified; (3) he was not promoted despite his qualifications; and (4) he was denied promotion under circumstances that create an inference of unlawful discrimination. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). In failure to promote cases, the Fourth Circuit construes the fourth prong to require a showing that "the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA." *Id.*; *see also Bandy v. City of Salem*, 59 F.4th 705, 712 n.3 (4th Cir. 2023) (noting that plaintiffs in ADEA discriminatory discharge cases are required to show that the hired individual was substantially younger and comparably qualified).

### A. There is no direct evidence of discrimination.

Direct evidence of age discrimination is shown when the employer "announced, or admitted, or otherwise unmistakably indicated that age was a determining factor." *Palmer*, 72 F.4th at 63 (cleaned up). Mr. Sullivan testified that none of the supervisors or members of the interview committee ever made a derogatory remark about age, much less one that bears on the promotion decision. Doc. 56-1 at 66–70. He has presented no

3

Case 1:22-cv-00847-CCE-JLW     Document 92     Filed 09/29/25     Page 3 of 10

direct evidence of conduct or statements reflecting a discriminatory attitude or that bear directly on the promotion decision at issue. Since his claim is based on circumstantial evidence, the *McDonnell Douglas* framework applies. *Westmoreland*, 924 F.3d at 725.

### B. The circumstantial evidence does not create any disputed questions of material fact.

For purposes of this motion, UNC Health concedes that Sullivan has made a prima facie showing of discrimination. Doc. 57 at 13. Sullivan met the minimum qualifications for the Sourcing and Contracting role, Doc. 56-2 at ¶ 23, and, at the time of the promotion, he was 60 years old, while J.V.D. was 44. Doc. 21 at ¶ 27.

UNC Health has presented evidence of a legitimate, nondiscriminatory reason for its actions. Everyone on the hiring committee rated Mr. Sullivan lower than the other two applicants based on the criteria established for the position. Doc. 56-2 at ¶ 27. Those criteria encompassed skills related to the position like technical knowledge, decision making, and planning and organizing. *Id.* at ¶¶ 29–30. Internal emails from the time show that the hiring decision was based on the assessment of a committee consisting of Mr. Sullivan's peers and supervisors in the Supply Chain department, as well as the hiring manager, all of whom unanimously favored J.V.D. for the job. *Id.* at ¶¶ 35–36.

When the defendant makes a showing of a legitimate non-discriminatory basis for the decision not to promote the plaintiff, the burden shifts back to the plaintiff to show that those reasons are pretextual. *Palmer*, 72 F.4th at 63. When an employer articulates a legitimate, non-discriminatory basis for its action, courts generally do not "decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the

4

true reason for the adverse employment action." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (cleaned up).

Here, Mr. Sullivan has not presented evidence of pretext sufficient to give rise to an inference that but for age discrimination, UNC Health would have promoted him. Mr. Sullivan contends in his brief that the hiring process was "riddled with irregularities," Doc. 87 at 21, but at his deposition he testified that he was not aware of any deviations from its normal hiring process. Doc. 88-3 at 44.

In any event, none of these supposed irregularities give rise to an inference of pretext. "The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent." *Barnes v. Charles Cnty. Pub. Schs.*, 747 F. App'x. 115, 118 (4th Cir. 2018) (per curiam) (cleaned up). Instead, "there must be some evidence that the irregularity directly and uniquely disadvantaged a protected employee." *Id.* (cleaned up). A plaintiff cannot establish pretext "by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006). While relevant, the nearly 20-year age discrepancy between Mr. Sullivan and J.V.D. does not, standing alone, rebut UNC Health's stated reasons for hiring the candidate all members of the hiring committee deemed more qualified.

Mr. Sullivan contends that he was better qualified because he had more experience and because peers within his organization rated him highly. Doc. 87 at 29. But UNC

5

Health was not required to make its decision based on the criteria Mr. Sullivan thinks are most important. *See Hawkins*, 203 F.3d at 279.

Mr. Sullivan also suggests that the difference in ratings between him and the other two applicants was not as large as UNC Health contends. Doc. 87 at 12–16. Even after modifying the results to take care of problems Mr. Sullivan claims existed, he remained the lowest rated. *Id.* at 15–16. Nothing about the way the hiring process was conducted shows an unfair process designed to lead to a younger candidate.

Finally, Mr. Sullivan speculates about "pervasive age discrimination" in his declaration, *e.g.,* Doc. 88-5 at ¶¶ 35–36, and offers factual assertions about matters he admits are outside his personal knowledge. *Id.* at ¶ 50.[1] This inadmissible testimony does not create a disputed question of fact. *See, e.g., Elam v. Early*, 138 F.4th 804, 816 (4th Cir. 2025)(noting conclusory and speculative statements are insufficient); Fed. R. Civ. P. 56(c)(4)(requiring that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

"ADEA plaintiffs face a high causation burden." *Arthur v. PET Dairy*, 593 F. App'x 211, 219 (4th Cir. 2015) (per curiam) (citing *Gross v. FBL Fin. Servs., Inc.,* 577 U.S. 167, 177–78 (2009)). Whether relying on direct or circumstantial evidence, a

---

[1] The Court has not waded through the hundreds of pages of exhibits to his declaration, Docs. 88-6 through 88-9, looking for evidence not specifically mentioned in the briefs. "Judges are not like pigs, hunting for truffles." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

plaintiff "must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Gross,* 577 U.S. at 177–78. Mr. Sullivan has not done so here. UNC Health is entitled to summary judgment.

III.    The Second Motion to Amend the Complaint

Mr. Sullivan filed this lawsuit in October 2022. Doc. 1. An early motion to file an amended complaint was denied. Doc. 20. In the scheduling order, the Court set a deadline of February 22, 2024, for any additional motion to amend pleadings. Doc. 28. Mr. Sullivan filed the pending motion to amend well over a year after this deadline, on August 25, 2025. Doc. 86.

The proposed amended complaint includes the demotion claim that was previously dismissed, Doc. 86-1 at pp. 12–13 ¶¶ 1–6, and adds nothing to it. *See* Doc. 20 (dismissing demotion claim). To that extent, the motion to amend will be denied.

He also seeks to add a claim that he was not promoted in retaliation for making an age discrimination complaint after he was demoted. Doc. 86-1 at pp. 13–15 ¶¶ 1–5. In the proposed amended complaint, he alleges that he complained of age discrimination in October 2020, that a person aware of that complaint, C.H., was involved in the decision-making process for the promotion, and that C.H. allowed others in charge of that process "to manipulate the selection process to disadvantage Plaintiff." *Id.* at p. 14 ¶ 3.

Under Federal Rule of Civil Procedure 15(a), courts should freely grant leave to amend complaints "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Generally, leave [to amend] should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the

7

amendment would be futile."  *Moore v. Equitrans, L.P.* (*Equitrans II*), 27 F.4th 211, 218 (4th Cir. 2022) (cleaned up).

But the liberal amendment rule in Rule 15(a) is qualified when a scheduling order has been entered.  Under Federal Rule of Civil Procedure 16(b), courts should modify scheduling orders "only for good cause."  Fed. R. Civ. P. 16(b)(4).  Notwithstanding the more lenient standard of Rule 15(a), "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."  *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *accord Moore v. Equitrans, L.P.* (*Equitrans I*), 818 F. App'x 212, 217–18 (4th Cir. 2020) (unpublished) ("The good-cause hurdle of Rule 16(b)(4), which states that a schedule may be modified only for good cause and with the judge's consent, dampens Rule 15(a)(2)'s mandate to freely give leave to amend when justice so requires." (cleaned up)).

Here, a scheduling order was in place, and the deadline to seek leave to amend pleadings was February 22, 2024.  Doc. 28.  Thus, Mr. Sullivan must show good cause for the late amendment.

The plaintiff contends that the good cause requirement does not apply, citing *James River-Norwalk v. Burch Roofing Co.* for the proposition that "after a scheduling order has expired, the considerations of Rule 16(b) are not relevant to the analysis of a motion for leave to amend pursuant to Rule 15."  891 F.2d 287 (table), 1989 WL 141656, at *2 (4th Cir. Nov. 16, 1989) (per curiam).  First, *Burch Roofing* is distinguishable, as it involved a motion to amend made during trial.  1989 WL 141656 at *1.  Moreover, it is an unreported decision, and the Fourth Circuit has since issued a published decision

8

directly on point and holding otherwise; the Rule 16(b) standard controls the situation in the present case. *Parvizian*, 535 F.3d at 298.

Mr. Sullivan has not shown good cause to amend the complaint after the deadline in the scheduling order. Mr. Sullivan's original complaint contains allegations about his discussion with C.H. and Human Resources after the demotion. Doc.1 at ¶ 23. In April 2024, Mr. Sullivan testified that C.H. was the person who called to tell him that he did not get the promotion and that he believed then that C.H. played a role in deciding who would get the job. Doc. 90-1 at 12. Mr. Sullivan admits that this was "confirmed" when he received discovery at some unknown date and when R.R., who was involved in the promotion decision, was deposed. Doc. 86 at ¶ 7. While that date is not explicitly stated, counsel represented in the August 2025 motion to amend that it was "a year ago," presumably meaning August 2024. *Id.* Yet Mr. Sullivan then waited a year after purportedly obtaining that information to seek leave to amend.

The only reason the plaintiff offers for delaying the filing of a motion to amend in August 2024 is that he was "waiting on what Plaintiff hoped would be a scheduling of [W.B.]'s deposition after which it would be able to incorporate that information into the amendment." *Id.* at ¶ 4. Mr. Sullivan rehashes the denial of his efforts to extend the discovery period to take that deposition, but he still fails to explain why W.B., the Chief Financial Officer who was not involved in the promotion process, was a necessary witness on a retaliation claim.

Diligence is the touchstone of good cause under Rule 16(b). *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020) (unpublished). When a moving party

knew of the underlying conduct giving rise to a claim but did not promptly raise that conduct, "then the party cannot establish good cause under Rule 16." *Id.* at 152 & n.1 (collecting cases). That is the case here, so the motion to amend will be denied.

It is **ORDERED** that:

1. The defendant's motion for summary judgment, Doc. 55, is **GRANTED**.

2. The defendant's motion to amend the complaint, Doc. 86, is **DENIED**.

3. Judgment will be entered separately.

This the 29th day of September, 2025.

_____
UNITED STATES DISTRICT JUDGE

10

Case 1:22-cv-00847-CCE-JLW   Document 92   Filed 09/29/25   Page 10 of 10